STREVER, APPELLANT, v. SINCLIER ET AL., RESPONDENTS.

(No. 5,050.)

(Submitted January 26, 1923. Decided February 24, 1923.)

[213 Pac. 253.]

*Equity—Mortgage Foreclosures—Attorney and Client—Findings—When Conclusive—Evidence in Writing—Improper Exclusion—Review on Appeal.*

Appeal and Error—Equity—Improper Exclusion of Written Evidence—Review on Appeal.
1. Where in an equity case tried with a jury, written evidence, about the credibility of which there was no question, was improperly excluded from its consideration but incorporated in the record, it may properly be considered on appeal in the determination of the case.

[66 Mont. 258.]

Mortgages—Attorney Paying Mortgage at Request of Client cannot Assert Title to It as Mortgagee.

2. An attorney who at the request of his client pays a mortgage on the latter's property, taking an assignment of the note secured thereby, cannot assert the title of a mortgagee, whether he has been reimbursed for his expenditures or not, and where he does so he is deserving of severe condemnation.

Attorneys—Buying Choses in Action for Purpose of Bringing Suit.

3. Under section 8980, Revised Codes of 1921, an attorney is prohibited from buying any note, debt or other thing in action for the purpose of bringing suit thereon, and where his intent is established, he cannot recover.

Equity—Findings—When Conclusive.

4. The findings of the trial court in an equity case will not be disturbed on appeal unless the evidence clearly preponderates against them.

*Appeals from District Court, Carbon County; Robert C. Stong, Judge.*

ACTION by William J. Strever against Naomi Sinclier and others. From the judgment for defendants and the order denying a new trial, plaintiff appeals. Affirmed.

*Mr. M. J. Lamb,* for Appellant, submitted a brief, and argued the cause orally.

*Messrs. Ingle & Demel,* for Respondents, submitted a brief; *Mr. C. W. Demel* argued the cause orally.

MR. COMMISSIONER FELT prepared the opinion for the court.

This is an action to foreclose a mortgage on real property. The indebtedness forming the basis of the action is evidenced by a promissory note given by the defendants Isaac Sinclier and Naomi Sinclier to one M. Halpin, and by him indorsed to the plaintiff. At the time the note was transferred to plaintiff, he obtained a satisfaction of the mortgage from Halpin, which he retained and withheld from record. The complaint, in addition to the allegations usually contained in actions of this character, recites that subsequent to the time the plaintiff

---

2. Right of attorney to purchase from adverse party the subject matter of his employment, see note in **Ann. Cas.** 1915C, 953.

acquired the note, the mortgagors executed and delivered a warranty deed to the premises to the defendant Alice D. Pierson, which deed was placed of record. Subsequent to this deed, the mortgagee, M. Halpin, executed a second satisfaction of the mortgage and permitted the same to be placed of record. The defendant Alice D. Pierson and the defendants Isaac Sinclier and Naomi Sinclier, made separate answers. Only one of the defenses interposed by these answers will require consideration, namely, that the debt was paid.

The case was tried to the court sitting with a jury. Five special interrogatories were propounded to the jury, which were answered favorably to the defendants. These were adopted by the court in its findings and conclusions. They were also made the basis of the final judgment and decree ordering the plaintiff's note and mortgage canceled and quieting the title of Alice D. Pierson to the property against all claim of the plaintiff. This decree was entered December 23, 1920. The plaintiff made a motion for a new trial, which was submitted to the Honorable Robert C. Stong, and overruled. The plaintiff has appealed from the decree and the order overruling his motion for a new trial.

The view we take of this case makes it necessary for us to consider only one of the nine specifications of error urged by the plaintiff in support of this appeal. One of the interrogatories propounded to the jury and their answer is as follows: "Was the note sued upon in this action paid with the proceeds of the $2,000.00 mortgage? A. Yes." The appellant contends in his third specification of error that this finding is not supported by the evidence. We will examine the record to determine whether this contention is well founded.

The evidence shows that the plaintiff had been engaged in the practice of law at Billings, Montana, for several years prior to the transactions giving rise to this action. In 1914 the defendants Naomi Sinclier and Isaac Sinclier became involved in litigation with one Petit. This culminated in a judgment in favor of the latter and against the Sincliers, in the sum of

$500, besides interest and costs, amounting in all, at the time
of settlement, to the sum of $867.86. The plaintiff represented
the defendants in that litigation. For his services in the mat-
ter he made a charge of $325, in addition to $198 incurred for
costs and expenses. Arrangements were being made during
the spring of 1917 to procure sufficient funds with which to dis-
charge these various items. The defendants owned some ranch
property, and the property in Fromberg, Montana, involved
in this action. The plan was to give real estate mortgages
upon part or all of this property to secure payment of the
amount required. The defendants were very anxious to free
the Fromberg property from encumbrance and to secure all
of the loan by a mortgage on the ranch property. One H. L.
Reed was willing to loan $2,000 on the latter, and $500 addi-
tional on the Fromberg property. The plaintiff, acting as
agent for Reed, was conducting the negotiations.

At this time M. Halpin held the mortgage on the Fromberg
[1] property, which is the mortgage involved in this action,
and upon which the sum of $616.65 was past due. As a re-
sult of Halpin's efforts to obtain payment, the defendants re-
quested the plaintiff to pay the amount and reimburse him-
self out of the proceeds of the loan being negotiated. This
led to the plaintiff obtaining the note which forms the basis of
this action. The proceeds of the $2,000 loan on the ranch
property were received by the plaintiff. For some reason or
other he seems very much opposed to explaining what was done
with this $2,000. He merely states generally that none of it
was used to pay the Halpin note. Two statements of the ac-
count, prepared by himself, were tendered in evidence several
times by the defendants. To these offers objection was in-
variably made, which objections were sustained by the court.
This evidence was material to prove that the various items
chargeable against the defendants could have been paid by the
proceeds of the $2,000 loan. The exhibits should have been
admitted. They are incorporated in the record, but from the
rulings of the court they appear to have been excluded from

consideration of the jury. Since the evidence is in writing, and no question as to its credibility arises, it is entitled to receive the consideration of this court. (*Bordeaux* v. *Bordeaux*, 43 Mont. 102, 115 Pac. 25.)

The first of the excluded exhibits is a statement of the defendant's account, sent to them by the plaintiff. This is dated April 30, 1917, four days after he had acquired the Halpin note. The maximum amount that H. L. Reed would loan on the ranch property was $2,000. In order to convince the defendants that this amount would not be sufficient to discharge the indebtedness, and consequently the necessity for $500 encumbrance on the residence property in Fromberg, the statement in question was prepared. It reads as follows:

| | | |
|---|---:|---:|
| Total cost in said (Petit) case including attorney's fees | $ 523 | 00 |
| Total credit | 110 | 00 |
| Balance | $ 413 | 00 |
| Interest on said amount at 10% | $ 80 | 00 |
| By credit interest | 27 | 25 |
| | $ 52 | 75 |
| | $ 413 | 00 |
| | 52 | 75 |
| To cost for cash to Petit | 867 | 86 |
| To note and interest to H. Halpin | 616 | 65 |
| Taxes on Fromberg property including mortgage | 368 | 00 |
| | $2,318 | 26 |

The item of taxes on the Fromberg property in the sum of $368 was remitted by the county commissioners. It was never paid by the plaintiff, and was not a proper charge against the defendants. Excluding that item, the amount due the plaintiff, including the Halpin mortgage, and all interest to which the plaintiff was lawfully entitled, was less than $2,000, at the time he received the proceeds of the loan in that sum.

But the plaintiff seemed bound and determined that there must be the $500 loan as well as the one for $2,000. He was not to be defeated in this purpose merely because an item of $368 was eliminated from his charges against his former clients. It was a very simple matter to make more charges. Exhibit 10 purports to be a loose-leaf ledger sheet of the defendants' account kept by the plaintiff. Of the items which he has entered, there is due upon August 6, 1917, the date when the $2,000 mortgage was executed, the sum of $1,379.21, in addition to the $616.65 on the Halpin note. This would make the total indebtedness on the date when the mortgage was executed $1,995.26. Upon the same date he enters a charge of $130 for commission on loans. We seriously doubt whether the plaintiff is either legally or equitably entitled to this commission. There is no evidence that the defendants agreed to pay it. He did not mention it in his communication dated April 30th, when this loan was contemplated. He was acting as agent of H. L. Reed at the time the loan was made. He himself was principally to be benefited in obtaining the loan, by reason of the fact that the proceeds were used in paying him his fee for unsuccessfully handling the litigation of defendants. Even granting that the plaintiff was entitled to $130 for commission, he would still have been able to pay upon the Halpin note all but approximately $125.

But, in order to charge all of the $2,000 against the defendants without allowing anything on the Halpin note, the plaintiff has subsequent entries upon his ledger sheet charged against the defendants. There is an item of taxes on the N. Sinclier farm of $124.77, dated November 29, 1917. There is a second item of taxes on the N. Sinclier farm in the sum of $26.58, dated January 24, 1918. There are also charges for examining abstracts, drawing legal papers, for postage stamps and recording mortgages, all of date January 24, 1918. On February 7th, he appears to have paid the interest note of $50.70 due December 1st, $212.65 upon the undue interest notes for the $2,000 loan. All of this not being quite sufficient

to make it necessary to place a $500 loan on the residence property, the plaintiff makes further interest charges against the defendants totaling a sum of $139.60. All of this accrues prior to August 6, 1917, and disregards entirely the fact that he had already charged $112.65 accrued interest to that same date. In making up the $139.60 he allows himself 12 per cent compound interest on open account and 12 per cent interest on the $867.86 judgment.

From all of this, it seems apparent that the plaintiff was determined upon two things: That these defendants must execute a mortgage upon the residence property as well as the ranch; that they were not to receive any of the amount realized from these loans. In order to accomplish this purpose, he paid the interest on the $2,000 loan two years in advance, and allowed himself $139.60 interest, that he could not be entitled to in any event.

The evidence reveals the fact that the defendants are old and in poor health. They had been harassed by litigation. In addition to the present case and the Petit case, the Reed mortgage appears to have been foreclosed. In spite of the fact that the plaintiff was unsuccessful in handling the Petit case, he seems to have retained the confidence of the defendants at the time the Reed loan was being negotiated. Furthermore, the defendants are illiterate. Isaac Sinclier could neither read nor write. His wife wrote all of the letters, of which several were introduced in evidence. They are devoid of punctuation and capitalization. Many of the simplest words, and all others, are misspelled.

Of all these, the misfortunes, ill health, ignorance, and the confidence the defendants have in him, the plaintiff takes advantage in his efforts to accomplish the above twofold purpose. In a letter dated February 7, 1917, referring to the $500 mortgage on the residence, he said: "You know, Sinclier, you are in poor health, and it would be much better to have this in shape for Mrs. Sinclier, should you not go through the operation successfully, which you told me you expect to have

performed." In the same letter he adds a little good cheer by reminding them of the fact that he has both of their wills in his possession. He also informs them that he has paid the $212.65 undue interest on the $2,000 loan, "as per your instructions." We are convinced that if the defendants ever consented to the payment of this item, while they were paying 1 per cent a month on the plaintiff's note, it was because of misplaced confidence in the latter's advice.

We feel that the plaintiff is deserving of severe condemna-
[2] tion for his conduct in this case, and are constrained to call attention to one more circumstance. When the plaintiff purchased the Halpin note, he did so at the request of his former clients. He was either acting as their attorney at the time or he was not. If he was acting as their attorney, he abused the confidence that a client reposes in an attorney. Their desire was to remove the encumbrance from their residence. It was not merely to have it held by some one else. They had a right to have the satisfaction obtained in the transaction placed of record. He was entitled to reimbursement for his expenditures in the matter; but.he cannot assert the title of a mortgagee, irrespective of whether or not he has been reimbursed. (2 R. C. L. 973; *Eoff* v. *Irvine,* 108 Mo. 378, 32 Am. St. Rep. 609, 18 S. W. 907; *Baker* v. *Humphrey,* 101 U. S. 494, 25 L. Ed. 1065 [see, also, Rose's U. S. Notes].) He is now seeking to foreclose the mortgage. The note provides for interest at the rate of one per cent per month. Halpin had never charged the defendants more than ten per cent per annum. The plaintiff paid the accrued interest at the latter rate. He now seeks judgment for the full amount, retaining for himself the interest that Halpin had remitted in favor of the defendants. He signs the complaint as his own attorney, and asks the court to allow $100 attorney
[3] fees. If he was not acting as attorney for the Sincliers in the transaction with Halpin, he was still an attorney and counselor. Section 8980, Revised Codes of 1921, provides: "An attorney and counselor must not, directly or indirectly, buy, or

be in any manner interested in buying, a bond, promissory note, bill of exchange, book debt, or other thing in action, with the intent and for the purpose of bringing an action thereon." From the fact that he had the note indorsed to himself specially at the time he purchased the same, it may be inferred that he intended to bring suit on the same under certain contingencies. This he has in fact done. New York has a statute similar to ours. In that state it is held that, where the intent is established, the attorney cannot recover. (*Browning* v. *Marvin*, 100 N. Y. 144, 2 N. E. 635.) The defense of this statute was not interposed in the present case. But we are of the opinion that the evidence would have been sufficient to defeat recovery on that ground. We are calling attention to the matter solely for the purpose of adding to the condemnation of the plaintiff's conduct in this transaction.

If there is any error in the proceedings, it was favorable to the plaintiff and against the defendants. The evidence is abundantly sufficient to justify the findings of the jury and the court that the Halpin note was paid out of the proceeds [4] of the $2,000 loan. The findings of the trial court in an equity case will not be disturbed on appeal, unless the evidence clearly preponderates against them. (*Murray* v. *Butte-Monitor T. M. Co.*, 41 Mont. 449, 110 Pac. 497, 112 Pac. 1132; *Copper Mt. Co.* v. *Butte & Corbin Co.*, 39 Mont. 487, 133 Am. St. Rep. 595, 104 Pac. 540.)

We therefore recommend that the judgment and order be affirmed.

PER CURIAM: For the reasons given in the foregoing opinion, the judgment and order appealed from are affirmed.

*Affirmed.*