BISCHOFF, APPELLANT, *v.* BISCHOFF, RESPONDENT.

(No. 5,456.)

(Submitted April 24, 1924. Decided May 19, 1924.)

[226 Pac. 508.]

*Divorce—Partnership Accounting—Findings—Evidence—Sufficiency—When Decree Providing for Support of Wife Unauthorized.*

Equity—Findings—When Conclusive.
  1.  Findings of the trial court in an equity action will not be disturbed unless the evidence clearly preponderates against them.
Divorce—Partnership Accounting—Findings—Evidence—Sufficiency.
  2.  Evidence in an action for divorce and for a partnership accounting, *held* sufficient to warrant denial of the divorce to plaintiff wife and decree in the husband's favor under his cross-complaint, and insufficient to overturn the finding that she was not a partner in his business, the record failing to show an agreement between them for the sharing of profits or losses or any authority in plaintiff to make contracts or incur liabilities, the interchangeable relation of principal and agent between the parties, or that she contributed any portion of the capital invested in the business.
Same—Where Divorce Granted to Husband, Provision for Wife's Support Unauthorized.
  3.  *Held,* that under section 5771, Revised Codes of 1921, and in the absence of legislation permitting it, the district court is without authority to compel the husband to whom a divorce has been properly granted for offense of the wife to make provision for her support, but that such support can only be awarded where divorce is granted the wife for the husband's offense.

*Appeal from District Court, Silver Bow County, in the Second Judicial District; A. C. Spencer, a Judge of the Thirteenth District, presiding.*

ACTION for divorce by Elizabeth Bischoff against Herman Bischoff, wherein defendant filed a cross-complaint. From a judgment for defendant, plaintiff appeals. Affirmed.

*Mr. George D. Toole* and *Mr. C. S. Wagner,* for Appellant, submitted a brief; *Mr. Toole* argued the cause orally.

A wife is competent to enter into partnership agreements with her husband respecting his or her separate property, and in an action between them, which must necessarily be one in equity and not in law, their property rights are to be determined whether they be co-owners, joint tenants or partners, and if not technically partners they may nevertheless so conduct themselves as to essentially create the partnership relation. (*Valensin* v. *Valensin,* 28 Fed. 599; 30 C. J., p. 671, par. 251, and p. 681, par. 259; *Potter* v. *Aherns,* 110 Cal. 674, 43 Pac. 388.)

In so far as we are aware, this court has not directly decided the question as to whether husband and wife may be partners, but it has at least recognized that a married woman may become the partner of a third person. (*Hanrahan* v. *Freeman,* 35 Mont. 584, 90 Pac. 793.) Under modern statutes, the right, wherever directly litigated, has been upheld, even where the business is carried on in the name of one of the parties. (*Hoaglin* v. *Henderson & Co.,* 119 Iowa, 720, 97 Am. St. Rep. 335, 61 L. R. A. 756, 94 N. W. 247; *Schofield* v. *Jones,* 85 Ga. 816, 11 S. E. 1032; *Burney* v. *Savannah Grocery Co.,* 98 Ga. 711, 58 Am. St. Rep. 342, 25 S. E. 915; *Stoff* v. *Erken,* 25 Cal. App. 528, 144 Pac. 312; note, 20 A. L. R. 1304.)

It may be conceded that ordinarily in divorce actions where the husband is granted a divorce for the offenses of his wife, alimony will not be allowed, but where, as in this case, the plaintiff has established her interest, then there is to be found no justification in the court's decision. The effect of this decision is to throw the wife out, after years of struggle, to subsist upon the charity of the public or to eke out an existence

as best she can. Such a result is not tolerated by the modern courts. (1 R. C. L. 936, par. 83; note, Ann. Cas. 1915C, 1252; note, 45 L. R. A. (n. s.) 881; note, 20 L. R. A. (n. s.) 421; note, 30 L. R. A. (n. s.) 73.)

*Messrs. William* and *Harry Meyer,* for Respondent, submitted a brief; *Mr. William Meyer* argued the cause orally.

Where a business is carried on by husband and wife there is a presumption that the business is owned by the husband and that a copartnership does not exist between the parties.

Married Women's Property Acts merely give the wife control of her separate estate and a partnership between husband and wife is invalid, according to the great weight of authority. (30 C. J. 681, 725; *Meier & Frank Co.* v. *Bruce,* 30 Idaho, 732, 168 Pac. 5; *Gilkerson Co.* v. *Salinger,* 56 Ark. 294, 35 Am. St. Rep. 105, 16 L. R. A. 526, 19 S. W. 747; *Bowker* v. *Bradford,* 140 Mass. 521, 5 N. E. 480; *Artman* v. *Ferguson,* 73 Mich. 146, 16 Am. St. Rep. 572, 2 L. R. A. 343, 40 N. W. 907; see, also, dissenting opinion in *Suau* v. *Caffee,* 122 N. Y. 308, 9 L. R. A. 593, 25 N. E. 488.)

Where a divorce is granted the husband for the misconduct of the wife, the latter is not entitled to alimony. (*In re Spencer,* 83 Cal. 465, 17 Am. St. Rep. 266, 23 Pac. 395; *Everett* v. *Everett,* 52 Cal. 383; *Volkmar* v. *Volkmar,* 147 Cal. 175, 84 Pac. 413; *Kusel* v. *Kusel,* 147 Cal. 52, 81 Pac. 295; *Elliot* v. *Elliot,* 135 Mo. App. 42, 115 S. W. 486; *Lampson* v. *Lampson,* 171 Cal. 322, 153 Pac. 238; 19 C. J. 243, note, 29.) And in the absence of statute alimony will not be granted where a divorce to the wife is denied. (19 C. J. 244; *Peyre* v. *Peyre,* 79 Cal. 336, 21 Pac. 838; *Nichols* v. *Nichols,* 169 Mich. 540, 135 N. W. 328.)

MR. JUSTICE STARK delivered the opinion of the court.

In her complaint in this action the plaintiff set forth a cause of action for divorce against her husband, the defendant, on

the ground of extreme cruelty, and also alleged that she was engaged with the defendant in a general mercantile business under a partnership arrangement whereby, as sole owners and partners, they conducted and operated a business under the firm name of Bishop's Bakery in the city of Butte, the profits of which were to be equally divided and the losses equally borne; that the defendant had refused to keep books of account showing the profits or losses of said business, or to allow the plaintiff to do so, and had refused to allow plaintiff to draw checks upon the funds of said firm deposited in bank; that she had repeatedly requested the defendant for an accounting, which requests had been refused, and that in order to enable her to receive a just division of the profits belonging to her it is necessary that a partnership accounting be had.

The defendant appeared in the action by answer which denied the acts of cruelty charged against him, and denied that plaintiff was a partner in the business conducted under the name of Bishop's Bakery, or had any interest therein. By way of counterclaim or cross-complaint, he then set forth a cause of action for divorce from the plaintiff on the ground of extreme cruelty, and prayed that he be granted a divorce from her.

Issue was joined upon the affirmative allegations of the answer, and the case was tried to the court without a jury. The trial court decided the issues against the plaintiff and in favor of the defendant, and entered a judgment in which it was recited "that plaintiff has failed to prove the allegations of her complaint * * * and is not entitled to the relief demanded in her complaint against the defendant, or to any other relief herein, and plaintiff is therefore denied a divorce," and "that plaintiff has failed to prove that she was a partner of defendant or had any interest in the business known as and operated under the name and style of 'Bishop's Bakery' * * * and is not entitled to any interest therein or to an accounting of the profits or losses of said business." From this judgment the plaintiff has appealed.

A painstaking review of the 400 printed pages of testimony reveals beyond question that each of these parties had much to endure and did endure much at the hands of the other; yet in view of the fact that the trial judge had the superior opportunity of seeing the witnesses upon the stand, hearing them testify and judging of their credibility, we are not disposed to disturb his findings that the defendant is entitled to a divorce from the plaintiff.

Upon the whole record there is not a very wide divergence in the testimony as to the substantial facts relating to the property rights involved.

The plaintiff and defendant arrived at Butte in the year 1915, from Vancouver, B. C. At that time defendant had about $400 in cash, which had been realized from a sale of his interest in a partnership business theretofore conducted in the latter city. The defendant is an expert baker, and upon his arrival in Butte purchased a bakery business located at 124 West Broadway. This place was run for a period of about seven months, during which time the defendant attended to the baking of the articles sold therein, and the plaintiff worked in the store and looked after the sale of the merchandise. This venture was not successful and was closed up, leaving the defendant $345 in debt, which he subsequently paid. After the closing of this business the plaintiff and defendant separated and lived apart from each other for about one year, during which time each of them worked for wages and neither contributed anything to the other.

The parties apparently became reconciled, and the defendant again embarked in the same line of business at a place on North Montana Street, which was conducted in the same manner as the one on Broadway. Defendant did the baking, and the plaintiff attended to the sale of merchandise in the store. This business was carried on for about six or seven months, when on account of renewed difficulties between the parties

the defendant left the place, and the plaintiff sold the business to some Greeks for the sum of $600, which was never paid.

The defendant then went to work again, and about a year later opened a place of business known as the Chocolate Shop, which was carried on in the same manner as the two businesses above referred to. The defendant did the baking while the plaintiff looked after the store and the sale of merchandise. This business was conducted for about one year and then sold out for $670. With the proceeds derived from the sale of the Chocolate Shop the defendant opened a similar business under the name of the Waldorf Market, which was carried on in the same manner that the others had been, for a period of about one year, and disposed of for $3,400. In each of these ventures the lease of the building or storeroom was obtained by defendant in his own name; he alone paid the rent and other bills incurred by checks on the bank account which was carried in his name, and upon which he alone had the right to issue checks. Neither of the parties drew any stated amount as wages, but each took from the till such sums of money as was desired without consultation with the other, and no account of the same was kept. When girls or women were employed in the store the plaintiff hired or discharged them at her pleasure and fixed the amount of their wages, which was paid by the defendant with checks upon the bank account. When men were needed they were hired, paid and discharged by the defendant.

About the time the Waldorf Market was disposed of, the defendant received $600 in settlement of an endowment insurance policy, making his capital at that time $4,000. At this time there was in contemplation the purchase of a business from J. L. Carroll. The plaintiff testified that she first learned of the opportunity to purchase this business and asked defendant to go and close a deal for it. Defendant denied this, and stated that he opened up negotiations for the same on his own account, without any suggestion from the plaintiff. However

this may be, the defendant purchased the business in his own name under a written contract, which was executed only by Carroll and himself, and took a lease upon the building in which the same was conducted, in his own name. The purchase price of this business was $18,000; $4,000 of this amount was made up of the $3,400 received from the sale of the Waldorf Market and the $600 which defendant had received on his insurance policy. The balance of $14,000 was borrowed from the Yegen Bank in Butte. Defendant testified that when he applied for the loan the cashier suggested to him to have the plaintiff sign the note with him, and that this was done. On the other hand, plaintiff testified that defendant was unable to obtain the loan without her signature to the note.

The business purchased from Carroll is the one known as Bishop's Bakery and it was continued as a going concern down to the time plaintiff left defendant on July 3, 1923, and was such at the date of the trial of the action in September, 1923. It is not disputed but that during all this period the defendant devoted his time to running the bakery, while the plaintiff managed the store and attended to the sales of merchandise, that she put in long hours and hired and discharged the female help and fixed their wages, and that defendant employed all the male help about the establishment. Likewise it is undisputed that the business was conducted in defendant's name; that all moneys were deposited in the bank in his name, and that he alone had authority to draw checks against the account; that he paid all of the employees and also paid all merchandise and other bills by checks on the bank account. It is also true under the testimony that neither plaintiff nor defendant withdrew anything from the business as wages, but that each had free access to the cash register and took money for personal use whenever it was wanted, and that no account was kept of such withdrawals.

Plaintiff testified that in connection with this business it was understood between her and the defendant that she was a

partner and that the profits and losses thereof should be equally shared and borne between them; that defendant never denied that such relation existed until he filed his answer in this cause; that the same understanding had been had in connection with each business they had conducted in Butte. To quote her own words, whenever a new business was opened, the defendant would say to her: "We are starting again. Whatever I make for you will be for you, and whatever you make for me will be for me. If anything happens to you it is mine, and if anything happens to me it is yours."

Defendant testified that there never was any such agreement or understanding between himself and the plaintiff, denied that she was a partner or had any interest with him in Bishop's Bakery or any other business which he had carried on in Butte, and said that the first time she ever claimed to be a partner or have an interest in the business was just before the commencement of this suit, and prior to that time had never spoken of a partnership or of dividing the profits. In reference to the money which plaintiff took from the business, defendant testified: "Q. She never drew any wages, did she? A. She took what she liked. Q. You never objected to that, did you? A. No; not a bit. Q. You took what you liked too, didn't you? A. I did. Q. That was a sort of a mutual agreement between you? A. There is no mutual—I consider that husband and wife. Q. Just as husband and wife? A. Absolutely. What's mine is hers, and what's hers is mine, so to say, in that respect, I let Mrs. Bischoff have entirely her way."

George D. Toole, one of plaintiff's counsel, called as a witness in her behalf, testified that shortly before the commencement of this action he went to the defendant at his place of business and had a conversation with him, in the course of which the defendant admitted that the plaintiff was a partner in the business, but, in explanation of this statement, in answer to the question, "You say he admitted. What did he say?" answered: "When I said, 'Isn't it true that she is here with you,

that she has an interest in this business, that she is in the business?' He said, 'Yes.' '' Defendant denied having made any of the statements or admissions attributed to him by Mr. Toole.

In all of the testimony there is nothing to indicate that plaintiff had any authority to, or did in fact, do anything in connection with this business other than to manage the selling end and to hire and discharge the help in that branch.

The foregoing is a substantial statement of everything developed at the trial relating to the alleged partnership or the claimed interest of the plaintiff in the business conducted under the name of "Bishop's Bakery." With this record before him, the trial judge decided that the plaintiff was not a partner and had no interest in this business.

Under the rule many times announced by this court, the [1] findings of the trial court in an equity case will not be disturbed unless the evidence clearly preponderates against them. (*Strever* v. *Sinclier,* 66 Mont. 258, 213 Pac. 253.)

We think the preponderance of the evidence is clearly in [2] favor of the conclusion reached by the judge of the trial court. Leaving out of consideration the emphatic assertion of the plaintiff that she was a partner in the business, and the equally emphatic denial of the same by the defendant, the facts which appear in the record fail to show that there was any agreement for sharing the profits or losses; that there was such a community of interest in the business as entitled the plaintiff to make contracts or incur general liabilities in connection therewith, or that there was between the plaintiff and the defendant "the interchangeable relation of principal and agent, which is indispensably necessary to constitute a copartnership." (*Sanborn* v. *Powers,* 58 Mont. 214, 190 Pac. 990; *Parchen* v. *Anderson,* 5 Mont. 438, 51 Am. Rep. 37, 5 Pac. 588; *Beasley* v. *Berry,* 33 Mont. 477, 84 Pac. 791; *Weiss* v. *Hamilton,* 40 Mont. 99, 105 Pac. 74.)

It is equally clear that the evidence does not establish that the plaintiff had any financial interest in the business of Bishop's Bakery. It did not appear that she contributed any portion of the original capital invested therein, and the fact that she signed the note with the defendant to enable him to obtain the loan of the $14,000 to complete the purchase, standing by itself, did not prove that she had an interest in the property purchased with the money raised in this manner.

Appellant finally submits that in the exercise of its funda[3] mental jurisdiction the court, in the absence of a partnership accounting, should have made a lump sum award to the plaintiff equivalent to an undivided one-half of the conceded value of the property, and to support this contention has directed the attention of the court to numerous cases where an allowance has been made for the future maintenance of a divorced wife, even though the divorce had been granted to the husband for her fault. However, an examination of these cases discloses that the statutes under which such allowances were made differ materially from ours, in that the right to provide for the maintenance of a divorced wife was not limited to cases in which the divorce was granted for an offense of the husband.

Section 5771 of the Revised Codes of 1921 reads: "Where a divorce is granted for an offense of the husband, the court may compel him to * * * make such suitable allowance to the wife for her support during her life, or for a shorter period, as the court may deem just, having regard to the circumstances of the parties respectively, and the court may, from time to time, modify its orders in these respects." This section is the same as section 139 of the California Civil Code, and was adopted from that state as section 193 of our Civil Code of 1895. Long prior to that time, and as early as 1877, the supreme court of California in the case of *Everett* v. *Everett,* 52 Cal. 383, had held that under this statute the court had no authority to compel a man to make provision for the support of his former wife, when a divorce had been granted to him for

her offense. The rule thus announced has been followed by that court in numerous cases which will be found cited in *Lampson* v. *Lampson,* 171 Cal. 332, 153 Pac. 238. Our statute is so plain as not to admit of any interpretation other than that placed upon it in California, and we are obliged to hold that under its provisions the court has no authority to require a husband to make provision for the support of his former wife except when a divorce is granted for his offense.

The circumstances in this case have impelled us to make a serious effort to discover a legal method by which the plaintiff could be given some financial relief, but we have found no way in which it can be done under the existing statutes. If a remedy is to be afforded in such cases, it must be provided by the legislature.

The judgment appealed from is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES COOPER, HOLLOWAY and GALEN concur.