ALBRECHT, Appellant, *v.* ALBRECHT, Respondent.

(No. 6,275.)

(Submitted June 7, 1928. Decided July 14, 1928.)

[269 Pac. 158.]

Mr. *Warren Toole* and Mr. *W. F. O'Leary*, for Appellant, submitted a brief; Mr. *O'Leary* argued the cause orally.

Mr. *F. A. Ewald* and Mr. *E. G. Toomey*, of Counsel, for Respondent, submitted a brief and argued the cause orally.

HONORABLE EDGAR J. BAKER, District Judge, sitting in place of MR. CHIEF JUSTICE CALLAWAY, disqualified, delivered the opinion of the court.

In this action the plaintiff sets forth a cause of action against the defendant, his wife, for divorce upon the ground of wilful desertion. To this a general demurrer was interposed, which was by the court overruled, and this ruling, amongst others, is assigned as error. The complaint states a cause of action and the demurrer was properly overruled. (Sec. 5739, Rev. Codes 1921; *Grierson* v. *Grierson*, 156 Cal. 434, 134 Am. St. Rep. 137, 105 Pac. 120; 9 R. C. L. 418.)

In due time the defendant filed her answer, containing a general denial and affirmative defense, and cross-complaint seeking separate maintenance, and all new matter contained in the defendant's answer was put in issue by reply.

The action was tried before the court sitting without a jury, and resulted in a judgment granting to the plaintiff a decree of divorce absolute on fault of the defendant, and in addition thereto awarding to the defendant permanent alimony of $90 per month, with directions as to its payment, and $750 attorney fee, and $94.60 costs of suit. The plaintiff appeals, seeking a modification of the judgment in this particular: That

that portion thereof awarding alimony, attorney fee and costs of suit to the defendant be stricken, and otherwise that the judgment be affirmed. Respondent and cross-complainant is likewise here with her cross-appeal, seeking a reversal of the judgment *in toto*.

By way of passing, we pause to remark that there is here presented one of the great tragedies of life. For over thirty-three years have the parties hereto met every trial and tribulation, each joy and sorrow, each success and disappointment, all to the end that their children, the crowning glory of their union, might be reared to the full power of manhood and womanhood, and now, as the hour of sunset is at hand, when the weary travelers yearn but to reach the final surcease, an ironical, but relentless, fate decrees a parting of the ways, and we are now asked by the cold process of law to adjust their civil rights, and accordingly we must proceed.

The pleadings and evidence disclose that the parties were married in September, 1894, and immediately thereafter took up their residence in the city of Great Falls, Cascade county, Montana, and have ever since, and up to some time in the month of June, 1920, maintained their home in the city of Great Falls. Three children were born to this marriage, the youngest of whom is now past twenty-four years of age. The plaintiff has been engaged in the furniture business at all the times mentioned, with more or less success. It appears that his business had furnished him with a great deal of worry, and this has continued throughout all the married life of the parties. The business is now encumbered with a mortgage, and has been so encumbered since 1890, in a sum in excess of $11,000, and the mortgagee is now seeking payment or renewal of the mortgage. The defendant refuses to join in such renewal, unless she receives the sum of $5,000. Added to this was the outlay for the purchase of new stock from time to time, together with annual payments of interest, and when these several accounts became due the plaintiff experienced great difficulty in securing money with which to

meet them, at times paying as much as fifteen per cent for this accommodation.

It was not the habit of the plaintiff to burden his family with his business cares, and it appears that at times, when the pressure was great, he would retire to his home with the desire to be left alone. He was intensely nervous and at times was given to fits of crying; yet it appears that at all of the times he provided a good home for his family, including food, education and recreation. The defendant is nervous and highstrung; she having been in ill health for some years. It appears that since long prior to the year 1919 disagreements have arisen between the parties, altogether concerning financial matters. These disagreements became more frequent, until they resulted in a status of incompatibility as between the parties. It appears that in 1920 the defendant left the home of the plaintiff in Great Falls, going to their summer home at Flathead Lake, in Flathead county, Montana, and, without returning to Great Falls, went to Portland, Oregon, where she has since resided. It further appears that the plaintiff, at different times during the absence of the defendant, tried to induce her to return to his home, but without avail.

On the twenty-third day of July, 1921, and while the defendant was residing at Portland, Oregon, she instituted an action in the district court of the eighth judicial district of the state of Montana, in and for the county of Cascade, seeking a divorce absolute from the plaintiff. This action remained pending until the twenty-third day of January, 1925, at which time it was dismissed by the court for want of prosecution and stricken from the calendar.

Even since the defendant has been living in Portland, Oregon, and since the year 1920, the plaintiff has paid to her, for her support, the sum of $75 per month. These payments were made each month, with the exception of two months in the year 1926, at which time the payments were stopped for the sole and only purpose of inducing the defend-

ant to return to the state of Montana and again take up her abode with the plaintiff, and although the plaintiff at different times in the months of January and February, 1926, requested and importuned the defendant to return to his home, still she refused to so return, or to live further with the plaintiff. The defendant nevertheless insisted that the plaintiff provide for her support and maintenance, and even went so far as to have the books of the plaintiff's business examined, evidently for the purpose of determining what sum he could pay. Following this, and on the eleventh day of February, 1926, the parties entered into the following agreement:

"Agreement.

"Whereas, William Albrecht and Wilhelmine Albrecht are husband and wife, and have resided in the city of Great Falls, Montana, for a number of years;

"And whereas, owing to incompatibility, it is impossible for the parties to live together, and owing to the ill health of Wilhelmine Albrecht, it is impossible for her to live in this altitude, and the condition of her health makes it necessary for her to live in Portland, Or.:

"Now, therefore, it is agreed by and between the aforesaid husband and wife, that the said Wilhelmine Albrecht may choose a location best fitted for her physical condition, which is at present time in Portland, Oregon, and the said William Albrecht will pay her seventy-five ($75.00) per month, commencing on the 15th day of March, 1926. It is agreed between said parties that said amount is a fair amount to be paid by said William Albrecht, at the present time, and that in order to make up an amount sufficient for Wilhelmine Albrecht to live in Portland, Or., Helmuth W. Albrecht, the son of the parties hereto, has volunteered to contribute a sufficient amount, in addition to the amount of $75 per month, to provide for the said Wilhelmine Albrecht. The said William Albrecht agrees to contribute the aforesaid sum of $75 per month until some other agreement is mutually reached

between the said William Albrecht and Wilhelmine Albrecht. "Dated this 11th day of February, 1926.

"[Signed] WILLIAM ALBRECHT.
"HELMUTH W. ALBRECHT.
"WILHELMINE ALBRECHT."

It is interesting to note that, although a copy of this agreement is attached to the answer, coupled with a prayer for its cancellation on the ground of surprise, inadvertence and mistake, yet no evidence was offered by the defendant in support of these allegations, nor is there any averment any place that this instrument is or was intended to be an agreement of separation, but quite the contrary. What proof the record does contain establishes the fact that the parties maintained the intention, and none other, that provision be made for the support of the defendant. There is not the slighest pretense that, at the time the agreement was entered into, the defendant offered to return, or even sought forgiveness, or solicited condonation, in any way or in any manner. To the contrary, the general agreement itself recites, "it is impossible for the parties to live together," and this agreement, it will be remembered, was entered into long after the marital offense of desertion on the part of the defendant had taken place, and the cause of action had fully accrued.

The trial judge had the opportunity, not only of hearing the testimony of the parties and of their several witnesses, but also of observing their demeanor while upon the stand, and also of judging the credibility to be given their testimony, and unless the evidence clearly preponderates against the findings of the trial court, such findings will not be disturbed. (*Bordeaux* v. *Bordeaux*, 43 Mont. 102, 115 Pac. 25; *Strever* v. *Sinclier*, 66 Mont. 258, 213 Pac. 253; *Humble* v. *St. John*, 72 Mont. 519, 234 Pac. 475; *Bischoff* v. *Bischoff*, 70 Mont. 503, 226 Pac. 508.)

We have very carefully read all the testimony taken on the trial, and we think the clear preponderance thereof supports

44

the conclusions reached by the learned trial judge that the plaintiff is entitled to a decree of divorce absolute on the fault of the defendant, and that findings of fact Nos. 1 to 5, inclusive, are correct and fully supported by the evidence.

An allowance of $90 per month permanent alimony was granted to the defendant, with directory provisions as to its payment. This is clearly error. A husband cannot be compelled to support his wife, when without his fault and against his will she voluntarily and intentionally deserts him and lives separate and apart from him. (*Lampson* v. *Lampson*, 171 Cal. 332, 153 Pac. 238; sec. 5771, Rev. Codes 1921.) As is aptly said in *Bischoff* v. *Bischoff*, supra, approving *Lampson* v. *Lampson*, supra, and the cases therein cited: "Our statute is so plain as not to admit of any interpretation other than that placed upon it in California, and we are obliged to hold that under its provisions the court has no authority to require a husband to make provisions for the support of his former wife, except when a divorce is granted for his offense."

In the case at bar the court further provided in its decree that the plaintiff pay to the defendant, within thirty days from the date thereof, the sum of $750 for professional services rendered by her attorneys in the prosecution of her case, and that the defendant do have and recover of and from the plaintiff her costs and disbursements incurred in this action, amounting to the sum of $94.60.

The complaint in this action was filed February 18, 1927. Thereafter, on March 11, 1927, the defendant appeared by demurrer, and on March 24, 1927, she duly prepared, served and filed her affidavit showing the necessity of suit money, attorney fees and temporary alimony, coupled with a prayer for a restraining order and order to show cause. Subsequently, on motion of R. K. West, Esq., attorney for the defendant, an order to show cause duly issued, and the matter coming on regularly for hearing, and testimony having been taken on the part of each of the parties, and the court being

advised in the premises, the following order was duly given and made on the first day of April, 1928:

"Order for Temporary Alimony, Suit Money, and Attorney's Fees.

"Defendant's order to show cause why plaintiff should not pay her temporary alimony, suit money, and attorney's fees coming on to be heard this 30th day of March, 1927, before me on the files herein, affidavits, and oral testimony of the parties hereto; W. F. O'Leary and the firm of Toole & Campbell appearing and being heard on behalf of plaintiff and in opposition to said order to show cause, and R. K. West appearing for and being heard on behalf of defendant; the court being fully informed on the law and the premises—

"It is ordered that plaintiff pay to R. K. West, defendant's attorney, the sum of $75 temporary attorney's fees and the further sum of $50 temporary suit money on or before the first day of April, 1927, to enable defendant to carry on this action, and that he pay to defendant, through her attorney, R. K. West, the sum of $85 per month, to be paid in two equal installments on the 1st and 15th of each month beginning with the 1st day of April, 1927, and running for the full months of April and May, 1927, as temporary alimony for the support and maintenance of this defendant during the pendency of this action. Not to exceed two months, unless further ordered by the court.

"Dated this 1st day of April, 1927.

"W. H. Meigs.

"Filed April 1, 1927."

On the thirtieth day of April, 1927, R. K. West, Esq., withdrew from the case and upon the same day the defendant filed her answer; F. A. Ewald, Esq., then represented her as counsel.

The plaintiff filed his reply on the thirteenth day of May, 1927, and thereafter, on May 26, 1927, the defendant again filed her affidavit praying for additional attorney fees, suit money and temporary alimony, and upon motion of the de-

46

fendant a further order to show cause issued on the same day, commanding the plaintiff to show cause on the second day of June, 1927, at the hour of 10 o'clock A. M. The time set for the hearing on this last-mentioned order having arrived and no appearance having been made, so far as the record is concerned, the defendant petitioner must be deemed to have abandoned the same.

Such proceedings were subsequently had that Honorable W. H. Meigs, Judge of the eighth judicial district, was disqualified and Honorable H. H. Ewing, Judge of the eighth judicial district, was invited to preside in said cause, which invitation was refused, and on the fourteenth day of September, 1927, Honorable Charles S. Hartman, Judge of the twelfth judicial district, was invited to preside in said cause. Judge Hartman having accepted the invitation and assumed full jurisdiction, the cause was set down for trial on the thirty-first day of October, 1927, and was duly tried on that day.

The entire record is barren of any evidence in support of the last-mentioned affidavit praying for additional attorney fees, suit money and temporary alimony, nor is there any evidence in support of any necessity, or at all, for the payment of attorney fees, but quite the contrary. It appears that additional counsel was employed by the defendant, to-wit, S. C. Ford, Esq., and no application was made for a continuance upon any ground. It does not appear anywhere that the defendant's counsel relaxed their efforts in her behalf on account of the nonpayment of fees, or from any other cause, or at all.

Section 5769, Revised Codes of 1921, provides: "While an action for divorce is pending the court or judge may, in its or his direction require the husband to pay as alimony any money necessary to enable the wife to support herself or her children, or to prosecute or defend the action." It is said in *Grimstad* v. *Johnson,* 61 Mont. 18, 25 A. L. R. 351, 201 Pac. 314, where this statute was under construction: "It requires

but a casual reading of section 3677, suprá [now section 5769, Rev. Codes 1921], to ascertain that the object of the Legislature in enacting it was to give the courts discretionary power to be exercised during the pendency of the action upon a proper showing by the wife in an application for that purpose, to compel the husband to provide the means necessary to enable her to prosecute or defend the action. In other words, the power in this behalf conferred by the statute is only ancillary to, or an incident of, an action for divorce. * * * Upon examination of the decided cases in other states which have the same or similar statutory provisions, we find that their courts generally agree that counsel fees may be allowed only while the divorce action is pending.''

In *Bordeaux* v. *Bordeaux*, 29 Mont. 478, 75 Pac. 359, it is said: ''It is well settled that the court below has no power, after trial and judgment in the case, to compel the husband to provide the wife with money to pay for past services of attorneys, or for expenses incurred in the trial of a case; that the necessity mentioned in the statute refers to prosecuting and defending the action in the future. Therefore, after the case has been tried, and a judgment has been entered, no such necessity can exist. (*Lacey* v. *Lacey*, 108 Cal. 45, 40 Pac. 1056; *Loveren* v. *Loveren*, 100 Cal. 493, 35 Pac. 87; *McCarthy* v. *McCarthy*, 137 N. Y. 500, 33 N. E. 550; *Newman* v. *Newman*, 69 Ill. 167.) There is one apparent exception to the principle announced by the last decisions cited, and that is that the district court may allow the wife money with which to pay such past expenses, when it becomes necessary to make such payment in order to enable her to continue her prosecution or defense. (*McCarthy* v. *McCarthy*, 137 N. Y. 500, 33 N. E. 550; *Loveren* v. *Loveren*, 100 Cal. 493, 35 Pac. 87; *Beadleston* v. *Beadleston*, 103 N. Y. 402, 8 N. E. 735.) But, in order to apply the doctrine announced in the cases last cited, there must always be a showing of this necessity.''

We have searched the record in vain to find any evidence whatever, offered on the part of the defendant, showing the

necessity for the allowance of attorney fees as made by the court, and we hold that such allowance was an abuse of discretion and was error.

Costs *eo nomine* were not recoverable by either party at common law. They are the creatures of statute, and in this state the defendant's right to recover costs must be made to depend upon our Code provisions. (*Spencer* v. *Mungus,* 28 Mont. 357, 72 Pac. 663; *Jones* v. *Great Northern Ry. Co.,* 68 Mont. 231, 37 A. L. R. 754, 217 Pac. 673.) In *Montana Ore Pur. Co.* v. *Boston & Mont. C. C. & S. M. Co.,* 27 Mont. 288, 70 Pac. 1114, it is said: "It may be within the power of the Legislature to lodge the whole matter of costs in the discretion of the courts, but until it does so they have no discretion in adjudging them, except in the class of cases mentioned in sections 1853 and 1855 [now sections 9789 and 9791, Rev. Codes 1921]."

Section 9789, Revised Codes of 1921, provides: "In other actions than those above mentioned, costs may be allowed or not, and, if allowed, may be apportioned between the parties, on the same or adverse sides, in the discretion of the court."

In 7 R. C. L., at page 783, paragraph 5 thereof, it is said: "In equity the awarding of costs depends largely upon the facts and circumstances of each particular case, and rests entirely within the discretion of the court, to be exercised upon principle and with reference to the general rules of practice. The prevailing party, however, is prima facie' entitled to costs, and it is incumbent upon the losing party to show the existence of circumstances sufficient to overcome such prima facie claim. When the case presents a question of some novelty and difficulty, the court need not decree costs to either party. And if it appears that it would be inequitable to compel the unsuccessful party to pay costs, the court may, in the exercise of sound judicial discretion, refuse costs to either party, may tax each party half the costs, or may impose the costs upon the prevailing party."

The defendant here is a poor woman without means, and it cannot be said that the trial court abused its discretion in awarding costs to her.

The decree is therefore ordered modified, by striking therefrom the provisions that the plaintiff pay to the defendant the sum of $90 per month permanent alimony, as well as the directory provisions therein contained with reference to the manner of payment, and by striking therefrom that portion awarding to the defendant the sum of $750 for professional services rendered by her attorneys in the case, and, as thus modified, the judgment and decree is affirmed. Costs of this appeal will be taxed to plaintiff.

*Modified and affirmed.*

ASSOCIATE JUSTICES MYERS, STARK, MATTHEWS and GALEN concur.