ROBERT T. JOHNSON, Plaintiff and Appellant, *v.* LOU-
ISE JOHNSON, Defendant and Respondent.
No. 9936.
Submitted December 3, 1959. Decided January 27, 1960.
Rehearing Denied March 1, 1960.
349 Pac. (2d) 310.

12

F. N. Hamman, Donald E. Gottwig, J. A. Turnage, Polson, for appellant. J. A. Turnage argued orally for appellant.

Raymond Gray, Missoula, for respondent.

MR. JUSTICE ANGSTMAN delivered the Opinion of the Court.

This is an appeal by plaintiff from a part of a judgment entered on December 17, 1957, wherein plaintiff was granted an absolute divorce from defendant wife and was ordered to pay her $1,600 in $100 monthly installments. The appeal is from that part of the judgment requiring plaintiff to pay to defendant the sum of $1,600.

Defendant has filed in this court a motion to strike the bill of exceptions as not having been settled in time. It should be noted that this point was not raised in the trial court.

On the contrary counsel for the respective parties stipulated that the bill was true, complete and correct, "and that the same may be approved and settled and allowed by the Court, as provided by law."

We have heretofore pointed out, under practically identical circumstances, that it "ill becomes a voluntary signer of the

compact to attempt to nullify it''. Central Montana Stockyards v. Fraser, 133 Mont. 168, 320 Pac. (2d) 981, 987.

Whether it is competent in any case for counsel to thus stipulate to the settlement of the bill of exceptions by the trial court, and then contend here that it was not timely, we need not here determine because in the view we take of the case it is determinable from the judgment roll alone and we need not resort to the bill of exceptions. ,

Plaintiff, in his complaint, alleged facts constituting a cause of action for divorce on the grounds of willful desertion, and prayed for a decree of absolute divorce. In her answer, defendant denied substantially all of these allegations, and affirmatively alleged ''as a separate and affirmative defense'' that ''the plaintiff induced the defendant to invest her life savings in the purchase of livestock which the plaintiff now holds in his possession, with the exception of the livestock said plaintiff sold, and which said life savings amount to the sum of approximately $2,091.51.''

It was alleged in the answer that the plaintiff and defendant agreed that defendant should secure employment at the Montana Training School at Boulder for the purpose of acquiring social security benefits and that plaintiff would operate the farm near Ronan and acquire social security benefits so that both parties could thereafter live on the farm by virtue of the help received from their social security benefits.

Defendant further alleged: That since the 19th day of February 1955 [the date of the alleged desertion], the defendant has made periodical visits to the plaintiff and contributed toward the maintenance and operation of said farm the amount of approximately $1,000.00.''

Defendant alleged further: ''That it is impossible for the defendant to continue living with the plaintiff after the institution of this action and therefore the defendant should be entitled to a decree of separate maintenance.''

Defendant prayed that plaintiff take nothing and that de-

fendant be granted a decree of separate maintenance in the sum of $100 per month plus $500 attorney fees, and "for such other and further relief as to the Court will seem meet and just in the premises."

In his reply, plaintiff admitted receiving $300 from defendant after February 19, 1955, but denied the other allegations of the answer.

The court found that defendant wife was guilty of desertion and that "it is for the best interest of all parties that a divorce be given and made in this action, as these parties will not live together again as husband and wife." The court further found "that crediting the defendant wife with all of the monies she has contributed to the farm and dairy business, and deducting the benefits and monies she received from the proceeds of said checks, leaves a balance in her favor in the amount of approximately sixteen hundred dollars ($1,600.00), to which she is equitably entitled." The court found that the approximate value of the ranch, cattle and personal property owned by plaintiff is the sum of $25,000.

The court concluded as a matter of law that the defendant was guilty of desertion and the plaintiff was entitled to an absolute divorce.

The court concluded further that the defendant pay her own attorney's fee, which the court fixed at $250. Judgment was entered accordingly.

As before stated, plaintiff has appealed only from that part of the judgment ordering the payment of money.

Defendant has moved to dismiss the appeal upon the ground that it is not competent to appeal from only a part of a judgment. Some members of the court think that motion should be sustained on the authority of Seibel v. Byers, 136 Mont. 39, 344 Pac. (2d) 129. In that case, this court squarely held that there was no such thing as an appeal from a part of a judgment and dismissed the appeal.

The writer of this opinion disagreed with the majority opin-

ion in that case, and believes that the appeal here should be considered on its merits since the statute, section 93-8005, authorizes an appeal from a judgment, "or some specific part thereof", and also since the judgment is divisible within the rule stated in Wills v. Morris, 100 Mont. 504, 50 Pac. (2d) 858. And see State ex rel. Mueller v. Todd, 117 Mont. 80, 158 Pac. (2d) 299.

The writer points out that the Seibel case, supra, was based largely upon the case of Lohman v. Poor, 68 Mont. 579, 220 Pac. 1094, which was expressly overruled by Wills v. Morris, supra.

The only issue attempted to be raised on the merits is whether the money part of the judgment can stand in view of the fact that the court found that the wife was the offender. Our statute, section 21-139, in part, provides:

"Where a divorce is granted for an offense of the husband, the court may compel him to * * * make such suitable allowance to the wife for her support during her life, or for a shorter period, as the court may deem just."

This court has repeatedly held that this statute prohibits the court from making an order requiring the husband to make provision for the wife's support, when the wife is the offender. Bischoff v. Bischoff, 70 Mont. 503, 226 Pac. 508; Damm v. Damm, 82 Mont. 239, 266 Pac. 410; Albrecht v. Albrecht, 83 Mont. 37, 269 Pac. 158; Grush v. Grush, 90 Mont. 381, 3 Pac. (2d) 402.

Section 21-139 is not involved in this case because the award to the wife here is not in any sense support money. It is simply a provision whereby the court is giving to defendant a part of what she contributed in accumulating the property held by the husband.

This court has held that the court, in an action for divorce, has no power to divest the title of the husband to specific real or personal property, in lieu of, or in addition to alimony. Rufenach v. Rufenach, 120 Mont. 351, 185 Pac. (2d) 293. But here,

as above noted, the order of the court simply awarded to the wife that which was already hers.

It is suggested that even this cannot be done under the rule followed in Emery v. Emery, 122 Mont. 201, 200 Pac. (2d) 251, and Shaw v. Shaw, 122 Mont. 593, 208 Pac. (2d) 514, but this case differs from those cases because here the court found by necessary implication that defendant did not make a gift to plaintiff of the .advances made by her. The presumption of a gift is a rebuttable one and here, unlike the Emery and Shaw cases, it is rebutted.

Furthermore, the writer of this opinion points out again that he did not agree with the majority opinion in the Emery and Shaw cases as will appear from his dissenting opinions therein.

Also, though the point is not directly involved here, the writer thinks that the case of Rufenach v. Rufenach, 120 Mont. 351, 185 Pac. (2d) 293, supra, and others holding that a divorce court cannot adjust property rights are erroneous and should be overruled.

A divorce court is a court of equity. Bordeaux v. Bordeaux, ▆▆ 43 Mont. 102, 115 Pac. 25. Once equity takes jurisdiction of a controversy it will grant complete relief. See innumerable cases in 4 Montana Digest, Equity, section 39(1), 162. A divorce court in Montana has been given jurisdiction over property for certain purposes.

Thus section 21-142 provides: ''The property of the husband and wife may be subjected to the support and education of the children, in such proportions as the court deems just, or the property of the guilty party only may be subjected to such support and education.''

And again section 21-145 provides: ''In case of the dissolution of the marriage by the judgment of a court of competent jurisdiction, the homestead, if selected from the separate property of either husband or wife, shall be assigned to the former owner of such property, subject to the power of the court to assign it for a limited period to the innocent party.''

The case of Thrift v. Thrift, 54 Mont. 463, 171 Pac. 272, is frequently cited as authority for the proposition that the court has no authority to transfer title to property from one spouse to the other in a divorce action in this state. The only reason for that holding was because in that case there was substituted service of process only and hence the court because of that fact had no jurisdiction over property. That is not the situation here.

A divorce court has authority to cut off the wife's dower interest in her husband's property. Thus it has authority to divest the wife of at least some of her property rights and there is no good reason why it may not divest the husband of some of his property rights where, as here, the issue is tendered by the pleadings. The writer recognizes that the authorities are in conflict on the subject, but believes the better reasoned cases support the view stated in 27B C.J.S., Divorce, section 294(3), page 280, as follows:

"In some jurisdictions the court granting divorce may divide or adjust rights in property accumulated by the joint efforts of the spouses. Property acquired jointly during the marriage may be divided whether the title thereto is in either or both of the parties." And, equal division under normal conditions of property accumulated through joint efforts is not regarded as unreasonable. 27B C.J.S., Divorce, section 295(5), page 304, et seq.

In adjusting rights of property accumulated through joint efforts, the court may consider who was at fault in causing the divorce, but that fact is persuasive only and not controlling and does not justify the deprivation of property rights as a penalty. 27B C.J.S., Divorce, section 295(7).

The court did not exceed its authority in finding and holding that defendant was entitled to be reimbursed for the money advanced to plaintiff, and which was used to accumulate the property held by plaintiff.

The judgment is affirmed.

MR. JUSTICES ADAIR and BOTTOMLY, concur.

MR. CHIEF JUSTICE HARRISON:

I dissent.

It has been the established law in this state since the cases of Emery v. Emery, 122 Mont. 201, 224, 200 Pac. (2d) 251, and Shaw v. Shaw, 122 Mont. 593, 613, 208 Pac. (2d) 514, that a district court has no power to adjudicate the property rights of the parties to a divorce action, for the reason that the statutes, which are the source of jurisdiction, confer no such power.

In 27B C.J.S., Divorce, section 291(1), page 260, it is said:

"It is generally held that the authority of the court, in suits for divorce, to transfer the property of either spouse to the other, or otherwise to dispose of it, is purely statutory and that in the absence of such statutory authority a court has no power in divorce proceedings to deal with the property rights of the spouses."

The majority attempts to distinguish the case at bar from the Emery and Shaw cases, but such cannot be done. What is involved is the *power* of a district court in divorce proceedings. In Emery v. Emery, supra, 122 Mont. at page 224, 200 Pac. (2d) at page 264, it was said:

"In Cox v. Cox, 266 App. Div. 38, 43 N.Y.S. (2d) 707, 708, the court said, '* * * we find no statute or judicial decision that would warrant the adjudication of a real property right in a matrimonial action.' Beals v. Ares, 25 N.M. 459, 185 Pac. 780, 791, holds that absent a statute so providing the court is without power upon decreeing a divorce, to transfer to the wife a portion of the property of the husband."

If the district courts had no power to adjudicate property interests in the Emery and Shaw cases, it cannot be done here. It is but a fiction to say that the court is not actually divesting the husband of property and transferring it to the wife but is actually giving the wife that which is already hers. This

was urged in the dissents to both the Emery and Shaw cases by the writer of the majority opinion here.

In order to sustain the district court's award of $1,600 to the defendant herein, and yet remain consistent, this court should overrule Emery v. Emery, supra, and Shaw v. Shaw, supra.

The writer of the majority opinion seemed to concede in his dissent to Shaw v. Shaw, supra, that under the rule laid down in Emery v. Emery, supra, the court cannot in a divorce action adjudicate the property rights of a wife in property standing in the name of the husband to which she contributed. In Shaw v. Shaw, 122 Mont. at page 619, 208 Pac. (2d) at page 528, he stated:

"I concede that under Emery v. Emery, 122 Mont. 201, 200 Pac. (2d) 251, if the husband manages to get property in his own name even though purchased with the wife's money, there is not much the court can do about it. I did not agree with the majority opinion in the Emery case. I think it is unsound in law and establishes a rule lacking in fairness and justice. I hesitate to concur in that part of the majority opinion in this case which follows the Emery case, even on the ground of stare decisis and without making an effort to have it now overruled. I think we should overrule it expressly at this time."

Unless the cases of Emery v. Emery, supra, and Shaw v. Shaw, supra, are expressly overruled, it is my opinion that the judgment below in favor of the defendant wife should be reversed.

MR. JUSTICE CASTLES:

I concur in the dissenting opinion of Mr. Chief Justice Harrison.