EMERY, Respondent *v*. EMERY, Appellant
No. 8843.
Submitted September 20, 1948. Decided December 1, 1948.
200 Pac. (2d) 251.

(201)

Melvin N. Hoiness, Rockwood Brown & Horace S. Davis, Norman Hanson and William H. Bellingham, all of Billings, for appellant. Mr. Hoiness and Mr. Davis argued the cause orally.

Chapple & Wooster, of Billings, for respondent. Mr. Wooster argued the cause orally.

MR. CHIEF JUSTICE ADAIR:

April 5, 1945, Bina M. Emery, plaintiff, filed in the district court of Yellowstone county, a complaint against her husband, John A. Emery, defendant.

The complaint comprises nine separately numbered paragraphs.

*Action for Divorce.* The first five paragraphs of the complaint set forth a cause of action for divorce alleging: (I) That for more than one year last past plaintiff has been and now is a resident of this state; (II) that on July 31, 1913, the parties intermarried and since have been and now are husband and wife; (III) that no children have been born of their union; (IV) that commencing on, to-wit, the 12th day of February 1943 and at divers times thereafter the defendant committed adultery; (V) that the alleged acts were committed without the consent, connivance, procurement or previous knowledge of plaintiff and that since she became cognizant of their alleged commission plaintiff has not lived or cohabited with defendant. Paragraph designated 1 of the prayer is: "That the bonds of matrimony heretofore and now existing between the parties be dissolved and that each of the parties be freed from their obligations thereunder." Neither the complaint nor prayer asks for any alimony, attorneys' fees or suit money.

*Claims against Trustee for Specific Real Property.* In paragraphs designated VI to IX, inclusive, plaintiff claims a resulting trust in her favor and that she is the owner of an undivided

one-half interest in various separate specifically described parcels of real estate designated in the complaint as parcels A, B, C, D, F, G and H, alleging: That parcels B, D, G and H stand of record in the name of her husband John A. Emery; that parcel A, comprising more than 6,000 acres of specifically described ranch land situate near Pompeys Pillar "stands in the name of J. A. Charboneau and John A. Emery, or Federal Land Bank of Spokane" and that parcel F "stands of record in the name of Suburban Home Company." Plaintiff fails to allege the record title owner of parcel C.

*Claims against Trustee for Specific Personal Property.* In her complaint plaintiff also claims a resulting trust in her favor and that she is the owner of an undivided one-half interest in certain specifically described personal property designated as parcel K, "assessed in the name of John A. Emery" and consisting of: "Household furnishings, machinery, 60 head of range horses, 20 head of saddle horses, one registered stallion, four registered bulls, and in excess of 177 head of registered cows, range cows and milk cows, also a large amount of hay and feed."

*Claims to Recover Specific Personal Property.* In her complaint plaintiff also claims that the furniture at the home of the parties located at 6th Avenue and 24th Street South is her sole and separate property "and that it is fitting and proper that upon the entry of the decree in this action that the furniture * * * be decreed to be the sole property of the plaintiff."

Plaintiff further claims that "a considerable amount of the furniture in the ranch house east of Pompeys Pillar, Montana, is also the sole and separate property of the plaintiff."

*Claims to Recover Specific Real Property.* The complaint further alleges that plaintiff *and* defendant are the record title owners of three specifically described tracts of land designated as parcels E, I and J and asks that one-half of said property "be set apart to the plaintiff as her sole property."

The complaint further alleges:

"VI. That since the marriage of the plaintiff and defendant as above alleged, they have accumulated a large amount of real

and personal property. That the money advanced which was the start of the accumulation of all of said property was advanced by the plaintiff, and that since said marriage and during the time of the accumulation of said property the plaintiff has worked and contributed a major portion of the efforts resulting in such accumulation. * * *

"That the clear market value of Parcels A and B above indebtedness is in excess of $42,000. That the clear market value of Parcels C, E, F, G and H is $30,000 and that said parcels of land are unencumbered. That Parcel D consists of an entire city block and is of the clear market value of $10,000. That Parcel I consists of an entire city block and is of a clear market value of $10,000. That Parcel J is the land upon which the Settergren Funeral Home is situated and is worth above indebtedness in excess of $40,000.

"That the items of personal property described in Parcel K are of the clear market value of $42,000 and upwards.

"VII. That all of the property above described, regardless of the record owner, in truth and fact is owned one-half by the plaintiff and one-half by the defendant by reason of the joint accumulation of said property by the parties hereto. That it is necessary and proper that a complete division of this property be made between the parties hereto, separating the ownership of said property, so that the plaintiff will have 50 per cent of said property standing in her own name for the reason that the defendant, by reason of his profligate habits, intemperance and adultery, is squandering the revenue received from said properties and has failed and continues to fail to pay the amounts due on mortgages, either principal or interest, and has failed and continues to fail to pay the taxes on said properties although the rental received therefrom is adequate for that purpose."

*Further Claims to Recover Specific Real Property.* The complaint further alleges:

"VIII. That property known as the Montana Hotel situated on Lots 23 and 24 in Block 87 of the original town (now city) of Billings, Yellowstone County, Montana stands in the name of

Walter Erdman and Jack Emery and Bina Emery. That an interest in said property was transferred by Walter Erdman to Jack Emery through inadvertency and mistake and for the reason that the person loaning the money on said property insisted that the defendant sign as co-mortgagee on a mortgage placed upon said premises. That said property came from the estate of an aunt of the said Walter Erdman and Bina Emery, and that the said defendant has no interest whatsoever in said property. That it is equitable and proper that the portion of said property transferred to the said Jack Emery be decreed to be the sole property of the plaintiff so that she shall be the owner of an undivided one-half interest in and to said hotel property. It is also proper that the plaintiff be required to refinance said property thereby relieving the defendant from any possible obligation as co-obligor on the mortgage above referred to.''

*Prayer for Relief.* The prayer so far as it concerns the specific real and personal property described in the complaint reads:

''Wherefore, plaintiff prays judgment as follows: * * *

''2. That one-half of the property described in Paragraph VI above as Parcels A to J, inclusive, be set apart to the plaintiff as her sole property.

''3. That the household furnishings situated in Billings, Montana, be decreed to be the sole property of the plaintiff and that she be given one-half of the rest of said property described in Parcel E of Paragraph VI above, except the furniture at the Ranch.

''4. That by the decree of this Court in this matter the property described in Paragraph VII above as the Montana Hotel property, one-half of which stands in the name of the plaintiff and defendant, be decreed to be the sole and separate property of plaintiff.''

*Joinder of Causes of Action.* This is an action for divorce where dissolution of the marriage is the subject of the action and wherein the property and property rights of the parties are

but an incident to the suit for divorce. Notwithstanding, the plaintiff has united in her divorce complaint a number of other causes, thereby attempting to convert her divorce suit into:

(1) An action to cancel a recorded conveyance to her husband of an interest in the specific parcel of real estate known as the Montana Hotel Property and compel a conveyance of such interest to the plaintiff wife, being of the class designated in subdivision 1 of section 9130, Revised Codes of Montana 1935;

(2) An action for partition and to recover specifically described real property standing of record in the names of the husband and wife as tenants in common, being of the class designated in subdivision 2 of section 9130, Revised Codes of 1935;

(3) An action to recover specifically described personal property being of the class designated in subdivision 3 of section 9130, Revised Codes of 1935;

(4) An action to declare a trust by operation of law, sec. 6785, Rev. Codes 1935, in favor of the wife in specifically described real estate standing of record in the name of the husband alone and for partition thereof being of the class designated in subdivision 4 of section 9130, Revised Codes of 1935;

(5) An action to declare a trust by operation of law, sec. 6785, Rev. Codes 1935, in favor of the wife in specifically described personal property assessed to and in the possession of the husband;

(6) An action to determine and adjudicate respective and disputed claims of the parties to both real and personal property.

The statute provides: "The plaintiff may unite several causes of action * * * in the same complaint, where they all arise out of: 1. Contracts, express or implied; 2. Claims to recover specific real property * * * and the rents and profits of the same, and for an injunction to stay waste or injury thereto; 3. Claims to recover specific personal property * * * 4. Claims against a trustee by virtue of a contract, or by operation of law; * * *" but it limits the joining of the several causes by the express provision that, "The causes of action so united must all appear on the face of the complaint to belong to one only of these

classes * * * and must be separately stated and numbered; * * *.'' Sec. 9130, Rev. Codes of 1935.

Here, without separately stating and numbering and in violation of the express provisions of section 9130, supra, the plaintiff has united in the one complaint various causes of action belonging to different, separate and distinct classes enumerated in such statute.

· On the day this action was commenced the plaintiff Bina filed an affidavit wherein she applied for injunctive relief against John to restrain him from molesting, seeing or coming near her during the pendency of the action and from disposing of or encumbering any of his property.

*Bina's Affidavit.* Plaintiff's affidavit recites:

''That in the past the defendant, while under the influence of alcohol, has threatened, annoyed and molested affiant and has pursued a course of conduct toward the plaintiff causing the plaintiff great and intolerable mental suffering. That the defendant is addicted to spendthrift and profligate habits and spends all the money coming into his possession for liquor and on his paramour, * * * to the extent that interest, principal and tax payments are not and have not for some time been made on the obligations which are secured by mortgages on the property of the plaintiff and defendant. That unless the defendant is restrained by this Court from withdrawing funds standing in his name at the Midland National Bank, and unless the Midland National Bank is restrained from paying or loaning further sums to the defendant, and unless the defendant is restrained from disposing of the personal property, one-half of which is the sole and separate property of the plaintiff, great and irreparable damage will be done to affiant and the property belonging to her and the defendant will be dissipated.

''That the plaintiff has made a full and fair statement of her cause of action to her attorneys * * * and is advised by them that she has a good cause of action for divorce and a division of the property of the parties hereto on the merits.

''That because of the abusive acts by the defendant toward

the plaintiff, it is necessary and proper that the defendant be restrained and ordered to remain away from the plaintiff at her place of abode at 6th Avenue and 24th Street South, Billings, Montana, and all other places during the pendency of this action. That affiant makes this affidavit in support of a motion on her behalf for an order of this Court restraining the defendant from molesting, seeing or coming near the plaintiff during the pendency of this action, and for an order restraining the defendant from disposing, pledging or hypothecating of any of his property or from withdrawing any of his funds standing in his name at The Midland National Bank or elsewhere during the pendency of this action, and for an order restraining The Midland National Bank of Billings, Montana and George E. Settergren from delivering any money to the defendant either from funds standing in his name at said bank or from personal loans made to the defendant during the pendency of this action, or from rental due from any of the property described in the complaint on file herein, and that a day certain be set for the return of said order to show cause and hearing thereon.''

*Original Restraining Order.* On April 5, 1948, on the aforesaid affidavit, and without notice to defendant, a restraining order was issued against defendant and he was also cited to show cause on a day certain why such order should not be made effective pendente lite. Before the order could properly issue it was necessary to first show to the court ''satisfactorily that sufficient grounds exist therefor.'' Sec. 9244, Rev. Codes 1935. At the time of issuing the order the only facts or proof then before the court were such as appear in plaintiff's aforesaid affidavit.

The restraining order, inter alia, recites:

''That the defendant be, and he hereby is, enjoined and restrained from interfering with, molesting or seeing the plaintiff, or in any way bothering the plaintiff during the pendency of this action and until further order of the Court, and that he, the said defendant, is further enjoined and restrained from disposing of, hypothecating or pledging any of his property during the pendency of this action and until further order of the Court,

and he is restrained from withdrawing any funds that he may have standing in his name at The Midland National Bank, and The Midland National Bank is restrained from delivering any such funds to the said defendant which will become a lien upon the property of the parties hereto during the pendency of this action and until further order of the Court.''

The restraining order was duly served upon the bank, Settergren and defendant.

*Supplemental Restraining Order.* On April 19, 1948, without any further showing, the court issued a supplemental restraining order which, inter alia, recites:

''That the defendant be, and he hereby is enjoined, restrained and ordered to remain away from the plaintiff and from the place of abode of the plaintiff and the property of the parties hereto at 6th Avenue and 24th Street South, Billings, Montana during the pendency of this action and until further order of the Court.

''That this supplemental and additional restraining order is in addition to the order to show cause and restraining order heretofore served upon the defendant, and that the said order heretofore served is in all respects in full force and effect.''

On April 23, 1948, John made his return to the orders to show cause and moved the court to dissolve the restraining orders, to deny plaintiff further injunctive relief and to dismiss plaintiff's application therefor. Defendant also filed a counter-affidavit with appropriate denials directly responsive to the allegations of plaintiff's affidavit.

*John's Counter-Affidavit.* Defendant's affidavit: Denies that he has threatened, annoyed or molested Bina or that he has any intention so to do; denies that he is addicted to spendthrift or profligate habits; denies that the property or an interest therein standing of record in his name is in jeopardy or that any part thereof is the sole or separate property of Bina and states that the sum of $57.87 in taxes, together with interest is delinquent on Lots 18 to 20 in Block 244 and the sum of $35.47 in taxes together with interest is delinquent on Lots 13 to 24 in

Block 188, all in the original town of Billings and that he purposely allowed such taxes to become delinquent because of the condition of the title and because it is questionable whether the property was worth the amount of the taxes and expense incident to obtaining proper title to the property and not because of affiant's improvidence but merely because of his judgment as to the value of the property.

John's affidavit further states that he has paid the Midland National Bank all the obligations due it and that the only other obligation to said bank is a livestock loan on which no payments will become due until some six months later; that by virtue of the court's order $967.22 standing to affiant's credit at said bank is impounded; that same is an operating account which affiant requires to buy feed and pay the other expenses incident to his ranch and livestock operations, and that he will use such moneys in such business operations and will not squander any part of such funds; that to finance and conduct his business it is necessary to obtain loans from said bank and other agencies and that the restraining order prevents the bank from making such loans to him, resulting in great and irreparable damage to him.

On April 23, 1948, a hearing was had and testimony introduced at the conclusion whereof John interposed a motion for dismissal of Bina's application for injunctive relief and for dissolution of the restraining orders of April 5th and April 19th on account of the insufficiency of the evidence and showing to confer jurisdiction on the court or to warrant the granting of the relief sought. The court dissolved the restraint on defendant's funds in bank but otherwise defendant's above motion and his motion made at the outset of the hearing were both denied.

*Injunction Pendente Lite.* Thereafter, on April 29, 1948, the court made an injunction order pendente lite reciting:

"1. That said restraining orders heretofore issued in said cause as aforesaid be and the same hereby are, continued in full force and effect, save and except as follows:

"(a) The order directing the Midland National Bank to refrain from delivering any funds belonging to the defendant,

and restraining the defendant from withdrawing any funds he may have standing in his name in the Midland National Bank be, and the same is hereby dissolved.

"(b) The defendant shall be permitted to go to the home occupied by the plaintiff if he be accompanied by a peace officer, and there remove such of his own personal belongings as he may wish from said premises and take them to some place other than the home now occupied by the plaintiff. Said act shall be done after notice to plaintiff, and in the day time.

"(c) With reference to the premises described * * * as the 'home property' located at 6th Avenue and 24th Street South, adjoining the City of Billings, Montana, the defendant shall have the right to go upon said premises for the purpose of caring for the stallion and other stock which have heretofore been under his personal charge and in his keeping, and likewise to have access to and the use of the office heretofore used and occupied by him in one of the out buildings on the said premises; provided, that the defendant shall not at any time after he may have removed his personal effects from the home heretofore occupied by the plaintiff and defendant, go into said house for any purpose until the further order of the Court; and provided further, that he shall not interfere with the use and occupancy of all of said premises by the plaintiff, for the purpose of caring for her own property upon said premises, which have been heretofore under the care and in the charge of the plaintiff; and provided further, that each of the parties to this action shall respect the right of the other to the use of said premises for the purposes above set forth."

From the separate injunctive orders of April 5, April 19 and April 29, 1948, the defendant has appealed.

*Grounds for Issuing Restraining Orders.* The restraining orders of April 5th and of April 19th issued without notice to the defendant will first be considered.

The concluding sentence of section 9245, Revised Codes of Montana 1935, provides: "In no case shall an injunction order or restraining order be issued without notice, unless it appears

to the court or judge that irreparable injury would result by the delay of giving notice.'' While the injunctive order may issue upon affidavits yet the statute requires that ''the affidavits shall show satisfactorily that sufficient grounds exist therefor.'' Sec. 9244, Rev. Codes 1935.

It is from *the facts* stated in the affidavits that the court must determine whether or not irreparable injury would result by the delay of giving notice and whether or not a satisfactory showing has been made that sufficient grounds exist to warrant the court in issuing the temporary restraining orders. Sec. 9244, supra.

Injunction is an equitable remedy and the pleadings therein ██ must substantially conform to the statutory requirements of good pleading. The complaint or affidavit must contain a statement of the material *facts* essential to establish the applicant's right to the relief sought. Sec. 9129, Rev. Codes 1935; State ex rel. Stephens v. Zuck, 67 Mont. 324, 215 Pac. 806. Irrespective of the nature of the relief sought the applicant therefor must allege *the facts* disclosing that he is entitled thereto. Chealey v. Purdy, 54 Mont. 489, 491, 171 Pac. 926; State ex rel. Board of Railroad Comm'rs v. District Court, 53 Mont. 229, 234, 163 Pac. 115. Such requirement is not met by statements of the legal conclusions of the pleader or of mere matters of opinion, unsupported by specific *facts* sufficient to show the opinion to be well grounded. Morris v. Bean, C. C., 146 F. 423, affirmed 221 U. S. 485, 31 S. Ct. 703, 55 L. Ed. 821; Mutual Life Ins. Co. v. Thompson, D. C., 27 F. (2d) 753; De Witt v. Hays, 2 Cal. 463, 56 Am. Dec. 352; Southern Pac. Co. v. Catucci, 47 Cal. App. (2d) 596, 118 Pac. (2d) 494; Pensacola & Georgia R. Co. v. Spratt, 12 Fla. 26, 91 Am. Dec. 747; Dennis v. Mobile & M. R. Co., 137 Ala. 649, 35 So. 30, 97 Am. St. Rep. 69.

Conclusions are not issuable. They need not be denied. Hence ██ in determining whether a pleading states sufficient *facts*, the court will disregard the *conclusions* therein alleged treating same as mere surplusage. Crenshaw v. Crenshaw, Mont., 182 Pac. (2d) 477.

In 3 Bancroft's Code Pleading it is said: *"The facts* entitling the plaintiff to injunctive relief, rather than mere legal conclusions must be stated. Thus an averment that the act in question will work great and irreparable injury * * * or that he has no plain, adequate and speedy remedy at law, is merely a legal conclusion and wholly insufficient in the absence of *the facts* from which it may be deduced." (pp. 2558, 2559, sec. 1548. Emphasis ours.)

Again: "Where plaintiff relies upon threatened interference with his rights, the complaint must show that the defendant is threatening or preparing to perpetrate the anticipated injury or wrong. For this purpose it is not sufficient to allege merely that plaintiff 'fears and believes' that defendant will do the acts in question. Facts must be stated sufficient to show reasonable grounds for apprehending that the injury is about to be attempted. A mere allegation that defendant intends to do the act sought to be enjoined without the statement of other facts indicating the probable execution of such intention unless restrained is insufficient support for a temporary injunction." (P. 2563, sec. 1551.)

Plaintiff's affidavit fails to state *facts* essential to show the requisite grounds to warrant the issuance of the restraining orders of April 5th and April 19th. The statement that "the defendant is addicted to spendthrift and profligate habits" is but a bare conclusion with no *facts* alleged to sustain it.

A "spendthrift" is defined by Webster's New International Dictionary as "One who spends money profusely or improvidently; a prodigal; one who lavishes or wastes his estate. Legally, in various jurisdictions, a person who by drinking, gaming, idleness or debauchery, so spends his estate as to expose himself or his family to want or suffering or to become a charge upon the public."

Eminent authorities disagree as to what constitutes "profligacy." Psychologists and alienists have said that "moral insanity" and "profligacy" are synonymous and convertible terms (Interdiction of Gasquet, 136 La. 957, 68 So. 89) while

lexicographers have defined the word ''profligate'' as, ''1. Overthrown, beaten; put to rout. 2. Completely given up to dissipation and licentiousness; broken down in morals and decency; shamelessly vicious; dissolute. 3. Wasteful to the point of dissipation; prodigal.'' Webster's New International Dictionary.

· ''It is not enough to allege the general opprobrious epithets employed in the present declaration. It is easy to frame reproachful expletives. A defendant as a matter of justice ought not to be required to answer them and the time of the courts ought not to be consumed by inquiry into them. The law requires a definite statement of specific facts constituting a wrong as a basis for judicial proceedings.'' Martha Dunn v. E. E. Gray Co., 254 Mass. 202, 150 N. E. 166.

The affidavit should state *the facts* so that from a reading thereof the court will be in a position to determine for itself whether defendant's alleged expenditures were all of the wasteful character charged. Such essential facts are wholly absent from plaintiff's affidavit.

The affidavit shows no money either withdrawn or borrowed from the bank,—no specific property, real or personal, disposed of for an inadequate consideration or dissipated or unjustifiably sold, offered for sale, pledged or hypothecated. It gives no time or place when or where defendant has been ''under the influence of alcohol.'' It gives no time, place, particulars or facts of any kind showing that defendant at any time or place ever threatened, annoyed or molested plaintiff and such affidavit wholly fails to state any *facts* showing any specific improper acts or conduct toward plaintiff or in what particulars or manner his ''conduct'' toward the plaintiff caused her ''great and intolerable mental suffering'' as charged.

No facts are stated in the affidavit that in any wise or manner show ''that irreparable injury would result by the delay of giving notice,'' sec. 9245, Rev. Codes 1935, of plaintiff's application for the temporary restraining orders. If, as plaintiff charges, the defendant has become a spendthrift and profligate and wholly mentally incompetent to manage his property then

resort could be had to the remedy available to plaintiff under the provisions of section 10412 et seq. Rev. Codes 1935, to the end that the husband's property and estate be protected and conserved. Such is a plain, speedy and adequate remedy at law available to plaintiff which prevents relief in equity by injunction. State ex rel. Stephens v. Zuck, 67 Mont. 324, 215 Pac. 806.

In addition to having a clear right there must also be an apparent and pressing necessity for an injunction. The injury threatened must be imminent and such as can only be avoided by an injunction. To entitle an applicant to an injunction he must show, not only that he is in danger of losing a substantial right but also that he is in no fault and any element of fraud in applicant's case or misrepresentation in his application will prevent the court from granting him injunctive relief. It is a universally recognized rule that an injunction should not issue upon the applicant's mere apprehension that some illegal act will be done. See International Register Co. v. Recording Fare Register Co., 2 Cir., 151 F. 199. Compare Sailors' Union of the Pacific v. Hammond Lumber Co., 9 Cir., 156 F. 450, certiorari denied 208 U. S. 615, 28 S. Ct. 567, 52 L. Ed. 646.

In 28 Am. Jur., "Injunctions," pages 442, 443, sec. 268, it is said: "While an application for an interlocutory injunction does not involve a determination of the merits, it does involve the exercise of a sound discretion. That discretion can be exercised only upon a determination, in the light of the issues and of *the facts* presented, whether the complainant has made or has failed to make such a showing of the gravity of his complaint as to warrant interlocutory relief. A complainant is not entitled to an injunction pending the litigation merely because the only relief which he seeks is injunction or because he alleges that without it he will suffer irreparable injury. The writ will issue only where it appears that there is a substantial question to be tried, and where the case is clear and free from doubt. * * * It is a cardinal principle of equity jurisprudence, however, that a preliminary injunction will not issue in a doubtful case or in one

in which the wrong or irreparable character of the apprehended injury is not manifest." (Emphasis ours.)

As the only showing made in applying for the restraining orders of April 5th and April 19th is that appearing from a reading of plaintiff's affidavit and, since no facts are therein stated showing any grounds for their issuance, it was an abuse of discretion to issue the orders of which complaint is made. Rea Bros. Sheep Co. v. Rudi, 46 Mont. 149, at page 160, 127 Pac. 85. Such restraining orders ordinarily would have been effective only until the hearing on the show cause orders and the issuance of the injunction pendente lite whereupon the restraining orders would have become functus officio as superseded by the later injunction. See 28 Am. Jur., "Injunctions," page 488, sec. 317, notes 19 and 20. However, the injunction pendente lite expressly directs that the restraining orders be continued in full force and effect and because of this situation we have before us three appeals from the three several orders.

*The Charge—Wasteful Spending.* To obtain the injunctive orders against defendant the plaintiff, in her affidavit, swore that the defendant "spends all the money coming into his possession for liquor, and on his paramour." This broad statement of unbridled coverage the plaintiff was called upon to establish by competent proof at the hearing held April 23d on the orders to shows cause. At such hearing plaintiff made no attempt to prove the extravagant charge made against her husband. Not only did she offer no evidence that even tends to support the charge but the undisputed evidence before us affirmatively shows that plaintiff's charge of wasteful spending on the part of her husband finds no support whatever in the record and that there is not a scintilla of evidence that defendant has spent any money whatever "for liquor" or that any female person other than his wife ever got a dime of his money.

*Failure of Proof.* Defendant's undisputed testimony shows: That about three months before the commencement of this action defendant *received* $30,000 from the Continental Oil Company for a tract of land; that he *spent* $11,600 of the money so re-

ceived in satisfying two outstanding mortgage liens on the property sold owing to a bank; that on January 2, 1948 he *spent* $10,000 of the money so *received* by delivering such sum in cash to his wife, the plaintiff, as her "share" or long "half" of the net proceeds; that to the balance of the money *received,* amounting to $8,400, representing his "share" or short "half" of the net proceeds he added $6,000 and then borrowed enough additional money to enable him to purchase, for approximately $20,000, cattle with which he stocked his ranch at Pòmpeys Pillar; that he *spent* $156 per head for the cattle laid down at the ranch; that in the three months intervening between the date of such purchase and the date of the hearing (April 23d) the value of the cattle had greatly increased so that one Joe Finley, a cattle buyer, offers defendant $226 per head "a round for them now;" that defendant *spent* considerable money in furnishing and equipping the dwelling now occupied by plaintiff and where both parties resided and made their home prior to defendant's eviction therefrom by injunctive order; that such dwelling and family home is furnished with "good stuff"; that the furniture is as good as there is in Billings; that the rugs were bought from Marshall Field's; that defendant *spent* $635.00 for the stove and $570.00 for the ice box therein and that all the other furnishings and equipment are "all in comparison with that"; that defendant *spent* $4,100 for a high grade pure bred registered studhorse for which he has since been offered $5,000, such horse having won six world championships and commanding a stud fee of $100; that defendant *spent* $4,500 for a parcel of real estate called the "barn property" for which he now has a buyer willing to pay $10,000.00 therefor but that the sale cannot be consummated because plaintiff declines to join in the deed of conveyance; that defendant has *spent* from $1,200 to $1,500 per annum for the insurance which he carries on his property; that he *spends* from five hundred to seven hundred dollars per month for current operating and maintenance expenses in running his home and business; that he *spent* $1,000 cash paid as the down payment on the purchase of the Montana Hotel property and

that he is required to *spend* approximately $6,500 for income tax payable on his aforesaid sale of the property to the Continental Oil Company.

Such testimony was given in plaintiff's presence at the hearing of April 23d. Plaintiff failed to either take the stand to explain, qualify or deny any part of the above testimony and she failed to offer any witness or evidence in rebuttal thereof. The record shows that defendant was the last witness to testify at the hearing and that upon completing his testimony he rested his case whereupon the trial court inquired of plaintiff whether she had any rebuttal to offer to which her counsel replied: "No rebuttal, your Honor."

Not only is there no proof whatever to support plaintiff's charges of wasteful and profligate spending on the part of her husband but such general, loose and extravagant accusations are fully refuted and shown to be wholly unsupported by any evidence of any sort or character. Plaintiff failed to "show satisfactorily that sufficient grounds exist" for the issuance of the injunction order, sec. 9244, R. C. M. There was a complete failure of proof on the issue of wasteful spending. See Rea Bros. Sheep Co. v. Rudi, supra. To reiterate: It is all too easy to frame reproachful expletives against a defendant which, as a matter of justice, he ought not to be required to answer and into which the courts should not be called to inquire. Martha Dunn v. E. E. Gray Co., supra.

*Wife's Property.* The record shows defendant handed plaintiff $10,000 in cash shortly before she instituted this action; that she is possessed of considerable other personal property; that she has various parcels of real estate standing in her own name and that she is an owner of record as a tenant in common of real property comprising parcels, I, J and E valued in excess of $80,000 over and above all indebtedness against same. No injunctive order is required to enjoin the alienation or encumbrance of these parcels for the simple reason that plaintiff's interest therein may not be conveyed or mortgaged without her consent and signature.

The record shows that defendant has a sale for another parcel of real estate standing in his name alone but that he is unable to complete the sale or transfer title because plaintiff has refused to join in the execution of the deed. Without her signature the purchaser of the husband's real estate would not be protected against the wife's dower interest therein. Sec. 5813, Rev. Codes 1935.

The record also shows that the record title to the Pompeys Pillar ranch (Parcel A) is in the Federal Land Bank of Spokane; that defendant has entered into a contract with the bank for the purchase of the property; that defendant has applied to Federal Loan Association for a loan of $8,200 with which to pay the balance owing on the Land Bank contract; that defendant's application has been approved and that defendant has executed all the necessary papers which are now at the Billings office of the Federal Loan Association but that he is unable to complete the transaction because plaintiff refuses to join in the execution of the papers as required to obtain the loan. No injunctive order was or is required to stop this deal or to prevent the mortgaging of this property. Without any court order or other assistance the plaintiff, single handed and alone, has effectively blocked the making of this loan. Here again the lending agency requires the wife's signature to the mortgage as a protection against her dower interest in the real property offered as security.

The parties to this action are husband and wife and their respective rights are governed by the statutes and rules of law applicable to husband and wife.

It is the law in this state: That the husband is the head of the family, sec. 5783, R. C. M.; that neither husband nor wife may be excluded from the other's dwelling, sec. 5785, R. C. M.; that a husband and wife may hold real or personal property together, jointly or in common, sec. 5789, R. C. M.; that neither husband nor wife has any interest in the property of the other, sec. 5785, R. C. M.; that all the property of the wife owned before her marriage and that acquired afterwards is her separate property,

sec. 5792, R. C. M.; that the wife may, without consent, agreement and signature of her husband, convey and transfer her separate property, real or personal, including the fee simple title to real property and execute a power of attorney for the conveyance and transfer thereof, sec. 5792, R. C. M.; that a married woman may make contracts, oral or written, sealed or unsealed, and may waive or relinquish any right or interest in any real estate, either in person or by attorney, in the same manner, to the same extent, and with the like effect as if she were a single woman, sec. 5811, R. C. M.; that a married woman may sue or be sued in the same manner as if she were sole, sec. 5809, R. C. M.; that either husband or wife may enter into any· agreement or transaction with the other or with any other person, respecting property, which either might, if unmarried, subject in transactions between themselves to the general rules which control the actions of persons occupying confidential relations with each other, as defined by the provisions of the code relative to trusts, sec. 5786, R. C. M.; and that: "A widow shall be endowed of the third part of all lands whereof her husband was seized of an estate of inheritance *at any time during the marriage,* unless the same shall have been relinquished in legal form." Sec. 5813, R. C. M. Emphasis supplied.

"At common law the husband, as a result of the marriage, was entitled to the services and earnings of his wife; and, even under statutes such as ours, enlarging the rights of married women, it is the duty of the wife, without compensation, to attend to all the ordinary household duties and labor faithfully in the advancement of her husband's interests. Thus the statute providing that the wife shall be entitled to her earnings for labor performed 'for a person other than her husband' does not change the rule respecting the services which she owes her husband as head of the family." Gates v. Powell, 77 Mont. 554, 252 Pac. 377, 380. Compare Stefonick v. Stefonick, 118 Mont. 486, 167 Pac. (2d) 848, 164 A. L. R. 1211.

*Advancements by Wife to Her Husband.* That the separate funds of the wife may have been employed to improve

the husband's property or to pay for the same does not create a trust or interest in the property itself in the wife's favor. "The law presumes that an advance of money by a wife to her husband is a gift, a gratuity; no contractual relationship is presumed, and no obligation arises therefrom." Bast v. Bast, 68 Mont. 69, 76, 217 Pac. 345, 347. See also Thrift v. Thrift, 54 Mont. 463, 171 Pac. 272; Roman v. Albert, 81 Mont. 393, 406, 264 Pac. 115; Bingham v. National Bank of Montana, 105 Mont. 159, 72 Pac. (2d) 90, 113 A. L. R. 315; Lewis v. Lewis, 109 Mont. 42, 94 Pac. (2d) 211. Before the plaintiff wife may establish that she has an interest in the defendant husband's property other than appears of record she must first show that the money she claims she paid out was not advanced as a gift and that the respective conveyances to her husband were not so intended. The record here contains no such proof as to the property standing in the husband's name alone and in the absence thereof the wife must be treated as a stranger to the title. Bingham v. National Bank of Montana, supra. One spouse may not make a gift of property to the other and thereafter continue to be the equitable owner of such property. Lewis v. Bowman, 113 Mont. 68, 121 Pac. (2d) 162.

*Husband's Property.* Much of the real property described in plaintiff's complaint stands of record in the name of the defendant husband alone. The presumption is that such property is the husband's separate property. By such record title the wife and the trial court are bound in this particular action, being a suit for divorce wherein are absent the necessary parties to enable a court to reform instruments of conveyance, compel a transfer or partition real estate. Compare Roman v. Albert et al., supra; Rowell v. Rowell, 119 Mont. 201, 174 Pac. (2d) 223, 168 A. L. R. 1141.

It is well established that the powers of courts in matrimonial matters are to be determined entirely upon the terms of the statutes conferring the jurisdiction.

In most community property states, special statutes have been enacted providing for the distribution of community property

but in such states it has been held that the power of the court to apportion property upon decreeing a divorce is limited to the community property and the homestead of the parties. Rose v. Rose, 50 Cal. App. (2d) 432, 123 Pac. (2d) 37; Tomaier v. Tomaier, 50 Cal. App. (2d) 516, 123 Pac. (2d) 548; Schwartz v. Schwartz, 52 Ariz. 105, 79 Pac. (2d) 501, 116 A. L. R. 633.

Montana has no community property law and the statutes of ▮▮▮▮ this state have conferred no power upon the court in an action for divorce to divest the title of the husband to specific real or personal property and adjudge or order an involuntary assignment or transfer thereof to the wife. Rufenach v. Rufenach, Mont., 185 Pac. (2d) 293; Thrift v. Thrift, 54 Mont. 463, 171 Pac. 272.

In Cox v. Cox, 266 App. Div. 38, 43 N. Y. S. (2d) 707, 708, the court said, "* * * we find no statute or judicial decision that would warrant the adjudication of a real property right in a matrimonial action." Beals v. Ares, 25 N. M. 459, 185 Pac. 780, 791, holds that absent a statute so providing the court is without power upon decreeing a divorce, to transfer to the wife a portion of the property of the husband. See also Commerford v. Commerford, Sup. 54 N. Y. S. (2d) 563, 566.

*Right to Preventive Relief.* In a proper case an injunction ▮▮▮▮ may issue to protect a married woman's property by restraining the sale thereof when her title to the property is clear as in case where a sale of the wife's property is threatened to satisfy her husband's debts. However, the injunction may not issue unless the wife's title to such property is clear. 4 Pomeroy's Equity Jurisprudence, 5th Ed., p. 947, sec. 1345 b, note 1.

In the instant case the wife's claimed title is not clear as to ▮▮▮▮ the real property designated as parcel A standing of record "in the name of J. A. Charboneau and John A. Emery, or Federal Land Bank of Spokane" or as to parcel F which "stands of record in the name of Suburban Home Company" or as to parcels B, D, G and H standing in the name of the husband alone or as to parcel C title to which is disputed and must be

cleared through an action brought for such purpose nor as to the Montana Hotel property standing in the names of Walter Erdman and plaintiff and defendant presumably as tenants in common. Clearly an injunction may not properly issue as to such parcels in the face of the allegations of the wife's complaint affirmatively showing that her claimed title to such property is not clear.

*Necessary Parties.* In the instant action the wife does not seek to enjoin or prevent the threatened *creation* of a cloud upon her title to the real estate designated as the Montana Hotel property but she asks the court to remove a cloud already created by an alleged completed transfer by Walter Erdman to plaintiff's husband. Specifically plaintiff asks that the property so transferred to her husband ''be decreed to be the sole property of the plaintiff so that she shall be the owner of an undivided one-half interest in and to the hotel property'' and ''that the plaintiff be required to refinance said property thereby relieving the defendant from any possible obligation as co-obligor on the mortgage above referred to.'' Clearly the wife's application for preventive injunctive relief as to the hotel property comes too late. She here seeks not to prevent, restrain or enjoin the creation of any threatened cloud on the title but, after the cloud has been cast and the damage done, she applies for a preventive restraining order. The court is clearly without power to grant injunctive relief under such circumstances.

As appears from her complaint the wife here asks the court to partition various parcels of real property. The primary object of an action of partition, being to divide among the co-owners land held by them either as joint tenants or as tenants in common according to their respective interest, *all* of the co-owners are necessary parties to the action. Neither J. A. Charboneau, Federal Land Bank of Spokane, Suburban Home Company or Walter Erdman have been made parties to this action and, of course, without bringing such interested persons and corporations into the suit and making them parties to the action the

court acquires no jurisdiction whatever to render or enter a decree affecting their interests.

All persons who are materially interested in the subject-matter involved in a suit and who will be affected by the result of the proceedings should be made parties to the action even though the defendant may have omitted to raise the objection of defect of parties and a failure to so bring in such necessary parties is fatal to the judgment. Sec. 9090, Rev. Codes 1935; McKenzie v. Evans, 96 Mont. 1, 10, 29 Pac. (2d) 657. Compare State ex rel. Bedord v. District Court, 112 Mont. 192, 114 Pac. (2d) 265.

*Lis Pendens.* Should plaintiff commence a proper action for partition of the various parcels of real property specifically described in her complaint she must comply with the provisions of section 9522, Rev. Codes 1935, by filing a lis pendens which shall charge all prospective purchasers and encumbrancers with notice of the pendency of the action, sec. 9109, Rev. Codes 1935, and which would adequately afford plaintiff all the relief obtainable through an injunction order restraining defendant from disposing of or mortgaging the described real estate.

*Claim and Delivery.* If plaintiff be the owner of the specific personal property claimed, or, lawfully entitled to the possession thereof, and same is wrongfully detained by defendant or others, her remedy to recover possession of such personal property is by an action of claim and delivery and not by a restraining order issued in an action for divorce. Section 9220 et seq., Rev. Codes 1935.

That plaintiff is the wife of defendant does not deny her the right to sue him for property owned by her and wrongfully detained by him. Sec. 5809, Rev. Codes 1935. In Commerford v. Commerford, supra [54 N. Y. S. (2d) 566], the court held that where the defendant husband was charged with wrongfully withholding personal property belonging to his wife, her remedy is replevin and not for an order in another action to compel the delivery to her of the property, and said: ''The plaintiff also asks that an order be made herein compelling the de-

fendant to turn over to her certain personal property, listed in a schedule attached to the moving papers, which she claims belongs to her and which the defendant refuses to surrender. The court has no power to make such an order in this action.''

A party to an action for divorce may not, by alleging a joint enterprise or partnership or by demanding an accounting, convert the divorce proceeding into any other form of suit. Hutson v. Hutson, 204 Minn. 601, 284 N. W. 780.

*Eviction of Husband.* We find no justification for ousting the husband from the family dwelling at Billings. Other folk live there including a hired man who regularly lives at the place and eats at the house and who could be reasonably expected to assist in saving plaintiff from harm should it threaten. However, there is not a scintilla of evidence in the entire record that at any time during all the years plaintiff and defendant have occupied the family dwelling at Billings, defendant ever at any time therein either threatened, or annoyed, or molested plaintiff in any wise or manner nor is there a word of testimony that any disturbance of any kind ever occurred within the family dwelling house. Until defendant was served with the restraining orders he and plaintiff occupied separate rooms each having a separate entrance. Plaintiff's room has a connecting bath while defendant's room has no such facility. At the hearing of April 23rd plaintiff testified: ''I haven't spoken to Mr. Emery since last fall. I have seen him many times, driving in and out of the place but I haven't spoken to him.'' At the same hearing (April 23d) the plaintiff contradicted such statement by testifying that about six weeks before the hearing she had journeyed to the ranch at Pompeys Pillar, situate some 40 miles distant from the family dwelling at Billings, and there gave her husband a piece of her mind and that thereupon he slapped her down and otherwise abused her in the presence of a witness but she made no effort to produce such witness at the hearing. Defendant took the witness stand and flatly and specifically denied having had any encounter with her whatever and further testified: ''I

haven't seen her down at the ranch this winter; she has been down there but I haven't seen her.''

Section 5785 of the Revised Codes of Montana of 1935 expressly provides: ''Neither husband nor wife * * * can be excluded from the other's dwelling.'' Here the family dwelling and home stands of record in the names of both husband and wife. It is not the separate property of either. It is the property of both as tenants in common. Even though the title were to stand in the name of the wife alone still under the facts of this case, the husband could not lawfully have been excluded therefrom. Notwithstanding the above quoted express prohibition set forth in section 5785, R. C. M., supra, the trial court, by its order of April 19th and its subsequent injunctive order pendente lite of April 29th, has assumed to eject and exclude the defendant from the family dwelling of which he is a co-owner of record and wherein he and plaintiff have resided and made their home for more than fourteen years past and where defendant maintains his office from which he operates and manages his large and varied holdings and business.

The filing by the wife of the divorce suit or the charges made by her therein did not work a forfeiture of defendant's property, make of him an intruder in his own home nor did it confer upon the trial court the power to thus summarily oust him therefrom. See Chapman v. Chapman, 25 N. J. Eq. 394; 164 A. L. R. 338; Goodwin v. Goodwin, 172 Misc. 118, 13 N. Y. S. (2d) 894; Hendrie v. Hendrie, 118 Fla. 478, 159 So. 667; Luitwieler v. Luitwieler, 57 Cal. App. 751, 207 Pac. 931. Under the facts of this case and the law applicable thereto the court was neither justified nor empowered to make the orders excluding defendant from the family dwelling and home nor directing that defendant, ''if he be accompanied by a peace officer'' shall be permitted to go to his family home ''and there remove such of his own personal belongings as he may wish'' and take them to some other place than his own home.

Title to or right of possession of real estate is not triable by injunction. Blinn v. Hutterische Society of Wolf Creek,

58 Mont. 542, 194 Pac. 140; Bingham v. National Bank of Montana, supra.

The orders of which complaint is here made and from which ▉ defendant appeals find no support either in fact or in law. Each is wholly unwarranted and each is hereby annulled and vacated and the cause remanded with directions to the trial court to forthwith dissolve the restraints on defendant and on his property, both real and personal, and to dismiss plaintiff's application for injunctive relief.

It is so ordered.

Associate Justices Choate and Gibson concur.

MR. JUSTICE ANGSTMAN, dissenting:

I think the restraining orders should be sustained, at least in part.

The complaint alleges that plaintiff and defendant were intermarried on July 31, 1913, being more than 35 years ago. They have no children. The property described in the complaint, it is alleged, was accumulated since the marriage and it is alleged that "the money advanced which was the start of the accumulation * * * was advanced by the plaintiff, and that since said marriage and during the time of the accumulation of said property the plaintiff has worked and contributed a major portion of the efforts resulting in such accumulation."

It is alleged that all of the property in truth and fact is owned one-half by plaintiff and one-half by defendant by reason of the joint accumulation thereof.

I think it would have been more appropriate for the restraining orders to more particularly describe the property which defendant was prevented from disposing of, hypothecating or pledging. In other words, I think it is proper for defendant to dispose of, hypothecate or pledge what plaintiff concedes is his one-half interest in the accumulated property but that the restraining orders should be modified to prevent disposition or pledging of property which plaintiff in her complaint contends belongs to her.

I do not agree that the court in a divorce action has no authority to adjust the property rights of the parties. If there be compelling reason the award may be in a lump sum. Stefonick v. Stefonick, 118 Mont. 486, 167 Pac. (2d) 848, 164 A. L. R. 1211.

Section 5771, Revised Codes of Montana 1935, provides that "Where a divorce is granted for an offense of the husband, the court may compel him to * * * make such suitable allowance to the wife for her support during her life or for a shorter period, as the court may deem just, having regard to the circumstances of the parties respectively." Sections 5777 and 5778 provide for the disposition of the homestead. It has been held that the fact that special provision is made for disposition of the homestead does not preclude the court from assigning other real estate or personal property of the husband to the wife. Warne v. Warne, 36 S. D. 573, 156 N. W. 60 (decided under statutes practically identical with ours). Other cases supporting this view may be found in the American Digest under the subject of "Divorce," section 242.

Much of the confusion on this subject in this state has arisen because of the case of Thrift v. Thrift, 54 Mont. 463, 171 Pac. 272, 273. In that case there was substituted service only, upon a non-resident defendant. In such a case the court held that title to the husband's property could not be transferred to the wife but did so because the property was not brought under the control of the court so that it could be disposed of on substituted service. The court was careful to point out that "the court did not assume to transfer to plaintiff her own property, but the property of the husband." Here the court is merely asked to transfer to plaintiff that which is hers. The Decker case (Decker v. Decker), 56 Mont. 338, 185 Pac. 168, is of no consequence here because that was an action for separate maintenance and not for divorce. The same is true of the case of Boggs v. Boggs, 119 Mont. 540, 177 Pac. (2d) 869. These three cases furnish the authority for the rule announced in Rufenach v. Rufenach, 120 Mont. 351, 185 Pac. (2d) 293.

But, as above noted, since in this case plaintiff is asking that

her own property, not that of her husband, be set aside to her, none of these cases is controlling here and we are not called upon at this time to determine whether in a divorce action the court may set aside to the wife property belonging to the husband.

I think, since the granting of a divorce divests the wife of the right of inheritance and the right of dower in her husband's estate, the court in its discretion may if it sees fit set aside to the wife a certain portion of the jointly accumulated property standing in the name of the husband under facts such as we have here where the wife's money went into the property first acquired and where the subsequent accumulations were through the joint efforts of both continuing for a period, as here, of 35 years. Under such circumstances the court is not divesting the husband of title to property which is his, but is merely setting aside to the wife that which in equity and good conscience already belongs to her.

We must assume that the allegations of the complaint are true for the purpose of this proceeding. If they can be substantiated by proof then plaintiff certainly should be entitled to have her own property set aside to her, and to have a restraining order preventing the defendant from disposing, encumbering or pledging any of her claimed interest in such property. Defendant of course should be permitted to dispose of or encumber whatever property concededly belongs to him. It may be too that after trial on the merits plaintiff may fail to establish her claim to the property involved but that does not deprive the court of the power to restrain disposition thereof until her rights may be determined.

The majority opinion asserts that the law presumes that an advance of money by a wife to buy property taken in the name of the husband is a gift. I accept that statement solely on the ground of stare decisis. My personal views on the subject are expressed in my dissenting opinion in the case of Bingham v. National Bank of Montana, 105 Mont. 159, 72 Pac. (2d) 90, 113 A. L. R. 315.

But at most the presumption of a gift is a rebuttable presump-

tion that may be overcome by evidence to the contrary. The fact that there is no evidence in the record before us to overcome this presumption is of no importance at this stage of the proceedings.

The time has not yet arrived for trial of the case on the merits and much of the offered evidence was excluded on that ground.

The question before us now is, if we assume that plaintiff may prove the allegations of her complaint, can the court prevent disposition of the property meanwhile.

I think too that the court was warranted in its discretion in restraining defendant from having access to his home pending determination of the action. In Chapman v. Chapman, 25 N. J. Eq. 394, the court thought that the husband should not be excluded from the family home during the pendency of the divorce action. But in that case it does not appear that the husband had committed acts of violence against the wife. Here the court was warranted in finding that defendant knocked plaintiff down and kicked her and abused her on at least one occasion. True this was denied by defendant but this conflict in the evidence made the question one for the trier of the facts. I think we cannot say that the court abused its discretion in restraining defendant from having access to the family home pending the determination of the action for divorce. It is to be noted that if plaintiff's evidence on the point be accepted, and we cannot say that the court was not warranted in accepting it, then no great burden is cast upon defendant in being deprived of the right of access to his home because she testified that he never spends any time there during the day and for the past five years has spent only about two nights a week there. She does not want him there because she said he "drinks very heavily and he goes on some of his splurges and he is not to be trusted when he is drinking."

The majority opinion asserts that the complaint joins two or more causes of action improperly. I think that question may not be raised in this proceeding. But, if it is properly raised I think the point is without merit. A divorce action is one in equity. Black v. Black, 5 Mont. 15, 2 Pac. 317. When equity

takes jurisdiction of a case and grants equitable relief, it will maintain jurisdiction and render that further judgment which properly follows therefrom. Stevens v. Equity Mut. Fire Ins. Co., 66 Mont. 461, 213 Pac. 1110. And it is well settled that a complaint is not open to the objection of multifariousness which joins a demand for property rights with a demand for divorce. The general rule with supporting authorities is stated in 17 Am. Jur., section 310, page 307, as follows:

"Frequently, it is sought to join a prayer for the return of the plaintiff's property with the prayer for a divorce. Whether such a uniting of prayers is open to the objection of multifariousness seems to depend upon whether the property rights asserted grow out of the marriage relation. If they do, as for instance where the plaintiff claims relief in respect of community property, the uniting of a prayer for such relief with a prayer for divorce is generally held not to constitute a misjoinder. The weight of authority seems to support the view that independent of statutory considerations, a bill for divorce may properly include a prayer to impress a trust upon property or otherwise settle property rights other than those arising out of a claim of alimony where such rights grew out of the marriage relation and third persons are not directly involved. It has also been held that the complaint is not rendered multifarious by joining therein a prayer for a conveyance by the husband to the wife of lands paid for with her funds the title to which was taken in his name."

Likewise my associates hold that the complaint and affidavit contain only conclusions of law and not sufficient facts to warrant a restraining order. I think the complaint and affidavit contain the requisite allegations of facts to warrant the court in granting a restraining order. Furthermore, I think the validity of the temporary restraining orders first entered ex parte is not before us. Plaintiff as a part of the restraining order procured an order to show cause supported by her affidavit. Defendant made return thereto supported by his affidavit. A hearing was had and evidence for both parties introduced. On this evidence

the court continued the restraining orders in effect subject to certain modifications. It specifically released the restraining order on the Midland National Bank and permitted defendant to withdraw funds from that bank standing in his name and made other modifications of the temporary restraining orders. Hence if the complaint or the affidavit were insufficient to warrant issuance of the temporary restraining orders defendant cannot now (and in fact does not) raise that point. My associates are raising the point sua sponte and I think without right or justification. The question before us is, does the *evidence* warrant the court in continuing the restraining orders in effect. I think it does.

True there was a failure of proof of some of the allegations contained in the affidavit of plaintiff. As stated in the majority opinion, plaintiff alleged in her affidavit that defendant "spends all the money coming into his possession for liquor and on his paramour." She offered no proof in support of the allegation. This allegation was made to support a restraining order against defendant preventing him from withdrawing funds standing in his name at the Midland National Bank and preventing the bank from paying or lending further sums to defendant.

Since plaintiff offered no proof in support of that allegation the court properly modified the restraining order as above noted. But absence of proof on this point does not affect other provisions of the restraining orders which I think were properly entered and on sufficient proof.

Neither do I attach importance to the fact that plaintiff has been able to block some of defendant's business transactions by refusing to give her signature. Absence of her signature will deter some, but perhaps not all people from consummating a deal with the husband.

I think the restraining orders should be modified as above indicated and, as modified, should be affirmed.

MR. JUSTICE METCALF:

I concur in the foregoing dissenting opinion of Mr. Justice Angstman.